```
                                                          USDC SDNY
                                                          DOCUMENT
                                                          ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                              DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                             DATE FILED: October 5, 2015
------------------------------------------------------------------ X
                                                          :
UNITED STATES OF AMERICA                                  :
                                                          :
           -v-                                            :
                                                          :
KENNETH LEVIN,                                            :    15 Cr. 101 (KBF)
TAYLOR LEVIN,                                             :
SEARS HOBBS                                               :    OPINION & ORDER
   a/k/a "Karen White,"                                   :
   a/k/a "Kelly Chase,"                                   :
JAMES CONLEY,                                             :
MARCEL HARRIS,                                            :
STEPHEN FRIEDMAN, and                                     :
JONATHAN CAMPBELL,                                        :
                                                          :
                       Defendants.                        :
------------------------------------------------------------------ X
```

KATHERINE B. FORREST, District Judge:

Pending before the Court is the Government's motion for an order finding that the crime-fraud exception applies to certain categories of documents and communications that defendant Kenneth Levin claims are protected by the attorney-client privilege. (ECF No. 90.) Levin claims these materials are privileged because they are based on his attorney-client relationships with the law firm of Wagner, Johnston & Rosenthal, P.C. ("Wagner"), and that the Government has failed to meet its burden of showing that the crime-fraud exception should vitiate that privilege.

As set forth below, the Government has made the necessary showing to support the existence of probable cause to believe that a criminal fraud has been committed and that the communications at issue were made in furtherance of that

crime. However, the Court will not require immediate production to the Government, but instead will exercise its discretion to undertake an in camera review.

I. BACKGROUND

On or about February 23, 2015, a grand jury sitting in this District returned a three-count Indictment charging that from approximately 2005 through 2011, Levin and several co-conspirators conspired to commit mail and wire fraud, and in fact committed mail and wire fraud, by orchestrating a scheme to sell vending machine "business opportunities" to prospective customers. (Indictment, ECF No. 2.) The Indictment alleges that in furtherance of that scheme, Levin and the other defendants operated out of at least six different corporate entities over a period of seven years. The Indictment alleges further that these name changes were done for the purpose of evading a federal law that required a disclosure statement including a list of past customers to be sent to prospective vending machine "business opportunity" customers.[1] (Indictment ¶ 22.a.). The Government proffers that the evidence shows that the six successive corporate entities shared the same address and phone number. (Gov. Br. 7, ECF No. 90.) Levin does not dispute that during the period encompassed by the Indictment, he retained counsel to perform various legal services, including, inter alia, the formation of new entities at the end of the

---

[1] The disclosure requirements referenced in the Indictment are stated in the Federal Trade Commission's ("FTC") Business Opportunity Rule (the "Rule"). See 16 CFR part 437. The versions of the Rule in effect during the period relevant to the Indictment did not prohibit the creation of new entities to carry on the same business under the same leadership as prior business opportunity seller entities.

prior entity's fiscal year, through which he sold business opportunities. (Levin Br. 2.)

In April 2011, Magistrate Judge Theodore H. Katz authorized a search warrant for certain premises then doing business under the name United Marketing Associates Corporation ("United Marketing"). (ECF No. 83-2.) Pursuant to the search warrant, documents were seized from United Marketing's offices and computers.[2] (Gov. Br. 2-3.)[3] The Government created a taint team to review the documents seized in the search and to identify and isolate any arguably privileged documents. (Gov. Br. 3.) After the defendants were subsequently indicted, the Government produced the arguably privileged documents to defense counsel on April 10, 2015. (Gov. Br. 3.) On May 7, 2015, the Court directed the defendants to assert any privilege claims over the documents by May 21, 2015. (ECF No. 60.) Levin's counsel timely provided a privilege log on behalf of Levin and his son, defendant Taylor Levin.[4] (Gov. Br. 3.)

The defendants' privilege logs and all potentially privileged documents were produced to an Assistant U.S. Attorney (the "Wall AUSA"), who is not a member of the prosecution team in this case. The Wall AUSA raised several issues regarding defendants' assertions of privilege to defendants' counsel, who indicated that they objected to making the documents at issue available to the Government's case team.

---

[2] In an Opinion & Order dated September 23, 2015, the Court denied defendants' motion to suppress the evidence seized pursuant to the April 2011 search warrant. (ECF No. 124.)

[3] Levin does not dispute the Government's recitation of the procedures it employed to review the seized documents, including the documents over which Levin asserts the privilege.

[4] Counsel for defendants James Conley and Sears Hobbs joined in the log; counsel for Hobbs also submitted a supplemental set of documents to add to the log. (Gov. Br. 3.)

(Gov. Br. 3.) The Government's motion to apply the crime-fraud exception, which was prepared and brought by the Wall AUSA, rather than by the Government's prosecution team for this case, followed.

The Court notes that it has concerns regarding the procedures used by the Government in bringing this motion, and particularly with regard to the role of the Wall AUSA. (The Court does understand that a similar process has been used in this District on other occasions. See United States v. Ceglia, No. 12-CR-876 VSB, 2015 WL 1499194 (S.D.N.Y. Mar. 30, 2015).) The Government's use of an ethical wall to conduct a responsiveness and privilege review of material seized pursuant to a search warrant is rooted in the protections of the Fourth Amendment. See 28 C.F.R. § 59.4(b) (discussing procedures for use of search warrants which may intrude upon professional confidential relationships). In short, when searches capture large volumes of documents, some of which may be privileged or non-responsive, the ethical wall is designed to protect the defendant's rights to the protection of his privilege and the culling out of documents not within the scope of the search warrant. The balance between protecting a defendant's Fourth Amendment rights and the realities of how documents are seized has led, inter alia, to the practice of using an ethical wall. As the wall is for the protection of the defendant's rights, it is decidedly not to give the Government a substantive look into that which it has no right to see.

The Court believes that the practice of having the Wall AUSA file a motion for application of the crime-fraud exception on behalf of the prosecution team

conflicts with the Wall AUSA's intended role to prevent overbreadth of the Government's seizure of material pursuant to a search warrant.[5]  In the Wall AUSA's circumscribed role, he or she is not supposed to affirmatively act on behalf of the prosecution.  Several courts in this district have expressed concern over the very practice of utilizing a Wall AUSA to conduct an initial review of seized material for potential privilege issues in the first instance.  See, e.g, United States v. Kaplan, No. 02 CR. 883(DAB), 2003 WL 22880914, at *12 (S.D.N.Y. Dec. 5, 2003); In re Search Warrant for Law Offices Executed on March 19, 1992, 153 F.R.D. 55, 59 (S.D.N.Y. 1994).  By bringing the instant motion, the Wall AUSA has gone one step further.  What the Court finds particularly problematic in this instance is that the Wall AUSA, at least implicitly, bases her motion on her substantive awareness of the content of the documents at issue.  This raises the potential Fourth Amendment concerns the ethical wall was intended to avoid.[6]

II.  LEGAL STANDARDS

   A.  Crime-Fraud Exception

"The attorney-client privilege is not without its costs." United States v. Zolin, 491 U.S. 554, 562 (1989).  Alleged—as well as actual—wrongdoers are entitled to the protections of the privilege. Id.  There is no basis in the law to find that a

---

[5] The Court notes that one of the recognized and accepted tasks of the Wall AUSA is to make initial privilege determinations of otherwise responsive documents.  One could argue that pursuing the crime-fraud exception is within the scope of that task.  But such an argument avoids several important realities including (1) the ethical wall is to avoid prejudice to the defendant, and (2) when a Wall AUSA uses the very information seen to make a motion in the Court in which the criminal matter is being prosecuted, that Wall AUSA has stepped into substantive participation in the case.

[6] The Court notes that for some reason the Wall AUSA has retained a set of the documents which are the subject of this motion.  (See Gov. Br. 9.)  Until the Court orders otherwise, those documents belong to the defendants based on the presumptive privilege.

5

complaint asserting fraud or other wrongdoing automatically vitiates the privilege. If allegations alone could lead to such a result, the attorney-client privilege would be weak indeed. With that said, the law is clear that under the crime-fraud exception, when the attorney-client relationship is used as part of the scheme to defraud, that is, when the communications are made for the purpose of, or in furtherance of, the scheme to defraud, the privilege no longer applies. Id. at 562-63; see also In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995); In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983 ("Marc Rich"), 731 F.2d 1032, 1038 (2d Cir. 1984) ("It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they are in furtherance of ongoing criminal or fraudulent conduct."). The crime-fraud exception may apply regardless of the attorney's lack of knowledge that he is being consulted in furtherance of the crime or fraud. Marc Rich, 731 F.2d at 1038; see Clark v. United States, 289 U.S. 1, 15 (1933). But, communications that are merely relevant to the fraudulent scheme will not trigger the crime-fraud exception. See United States v. Jacobs, 117 F.3d 82, 88 (2d Cir. 1997), abrogated on other grounds by Loughrin v. United States, 134 S. Ct. 2384 (2014).

    The party withholding documents on the basis of the attorney-client privilege bears the burden of supporting that privilege with sufficient information to indicate its applicability. See Fed. R. Civ. P. 26(b)(5). To overcome that privilege, the party seeking to vitiate the privilege must show probable cause that a crime or fraud has

6

been committed and that the communications were in furtherance thereof. Marc Rich, 731 F.2d at 1039; see also Jacobs, 117 F.3d at 87.

In Jacobs, the Second Circuit held that to support such a showing of probable cause, the movant must put forward a factual basis that would strike a prudent person as "constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" Jacobs, 117 F.3d at 87 (quoting In re John Doe, Inc., 13 F.3d 633, 637 (2d Cir. 1994)). To order an in camera review of documents for which the attorney-client privilege has been claimed, the Court must find that the Government makes a "showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." In re John Doe. Inc., 13 F.3d at 636 (quoting Zolin, 491 U.S. 554, 572 (1989) (quotation marks and citation omitted)). Once such a showing has been made, the Court has the discretion to engage in an in camera review. Jacobs, 117 F.3d at 87.

III.   DISCUSSION

Here, to support its motion to vitiate the attorney-client privilege, the Government appropriately relies on the allegations of the Indictment, audio recordings that, according to the Government, capture two of the defendants discussing changing the name of the business-opportunity entity to avoid disclosure requirements and one additional defendant stating that defendants' re-register their business entity every year to avoid FTC disclosures, and proffered testimony of a cooperating witness. (Gov. Br. 7.) The Government also relies on the

7

descriptions of documents from defendants' privilege logs.  The Government contends that, taken together, these materials establish sufficient probable cause that a crime or fraud was committed and that the attorney-client communications at issue were made with the objective of furthering the crime or fraud.  The Court agrees.

The Grand Jury has returned an Indictment, finding probable cause to charge the defendants with mail and wire fraud. (Indictment, ECF No. 2.)  The Government has thus satisfied the first prong of the crime-fraud exception.  See Kaley v. United States, 134 S. Ct. 1090, 1097 (2014).

As to the second prong, the Indictment does not, by itself, also establish that the attorney-client communications at issue were made in furtherance of defendants' crime.  The Court acknowledges that the Indictment alleges that the name changes of defendants' business entities were part of defendants' scheme. (See Indictment ¶ 22.a.).  But the issuance of an Indictment does not necessarily equate with agreement by the Grand Jury that there is probable cause to believe each alleged fact occurred as stated.  Nevertheless, there is a sufficient factual basis for this Court to make the necessary determination.  Audio recordings in which two defendants discuss changing the name of their business-opportunity entities to avoid disclosure requirements and another defendant states that defendants' re-register their business entity every year to avoid FTC disclosures, combined with the Government's proffered testimony of a cooperating witness that Levin's purpose in changing the name of his corporate entities was to disguise the fraudulent

scheme, provide the Court with "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." Jacobs, 117 F.3d at 87. Although the Government does not contend that defendants' routine name changes were in and of themselves violations of any law, that is not dispositive. Facially legitimate conduct may constitute an action taken in furtherance of fraud in appropriate circumstances. See In re John Doe Corp., 675 F.2d 482, 491 (2d Cir. 1982) (applying crime-fraud exception to documents relating to a "Business Ethics Review" report that a corporation used to induce underwriters and auditors involved in a public offering to believe that no irregularity had been found with respect to prior payments the corporation had made to a lawyer).

Defendants' privilege log entries also provide the Court a reasonable basis to conclude that the contested documents are pertinent to the name changes. For example, the privilege log describes a number of documents as pertaining to FTC and various state law disclosures. (See Gov. Br., Ex. A.) Given the allegation that defendants changed their business entity names to avoid having to make such disclosures, the Court finds a reasonable basis to conclude that these documents relate to defendants' business entity name changes.

Defendants counter that certain portions of the Government's recordings provide an innocent explanation for their routine practice of changing their business-opportunity entity names. But "the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." Panetta v.

9

Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (alterations and quotation marks omitted)).  That argument goes to the weight of the evidence and is insufficient to defeat the existence of probable cause.  Krause v. Bennett, 2d Cir. 362, 372 (2d Cir. 1989) (probable cause inquiry does not serve to "finally determine guilt through a weighing of the evidence").  To invoke the crime-fraud exception, the Government need only establish a "reasonable basis" to suspect that the communications were in furtherance of the perpetration or attempted perpetration of a crime or fraud.  Jacobs, 117 F.3d at 87.  It has done so.[7]

While the Court concludes that the Government has made a sufficient showing of probable cause, the Court does not believe that the result is so obvious such that it would be appropriate to order defendants to immediately produce the documents at issue to the Government.  Instead, the Court exercises its discretion to order the documents to first be produced to the Court for in camera review.  See Jacobs, 117 F.3d at 87 ("[T]he decision whether to engage in an in camera review of the evidence lies in the discretion of the district court."); In re John Doe. Inc., 13 F.3d at 636 (A Court may order an in camera review if there is a "good faith belief . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.").  An in camera review will place the Court in the best position to make an informed decision as to whether invasion of the attorney-client privilege is justified.

---

[7] Defendants' intentions are, of course, an issue that must be determined by the finder of fact at trial on a full record.  The Court does not in this decision purport to weigh the merits of the Government's case or make any ruling as to the meaning or significance of any evidence anticipated to be offered at trial.

IV. CONCLUSION

For the reasons set forth above, the Court hereby orders the parties to produce to the Court for <u>in camera</u> review, not later than **Tuesday, October 13, 2015**, the documents identified on page 9 of the Government's opening brief in support of its motion.[8]

SO ORDERED.

Dated:    New York, New York
          October 5, 2015

                                                      KATHERINE B. FORREST
                                                      United States District Judge

---

[8] The Court notes the Wall AUSA's request for permission to disclose a complete set of briefing on this motion to the Government's case team. The Court sees no reason, at this juncture, for the parties' briefs with respect to the instant motion, or for this decision, to remain under seal. Therefore, the Court will post this Opinion & Order to the docket on the **afternoon of Wednesday, October 7, 2015**, unless it has received an objection from any party **within 48 hours** of receiving a copy of this Opinion & Order. The parties are also hereby ordered to file unredacted copies of their briefs on the public docket by the **end of day on October 7, 2015** unless any party objects to unsealing these materials **within 48 hours** of receiving a copy of this Opinion & Order. Any objecting party should explain the basis for its objection and identify the particular material that it believes should remain sealed.

    Additionally, the Court requests that the Wall AUSA notify the Court **within 48 hours** of receiving this decision whether the Government's briefs relating to this motion rely in any way on information that the Wall AUSA obtained from review of the documents at issue. If so, the Wall AUSA shall identify to the Court the portions of the Government's briefs that rely on that knowledge.