UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 8, 2016
```

------------------------------------------------------------- X
:
UNITED STATES OF AMERICA                                      :
:
-v-                                     :
:                    15 Cr. 101 (KBF)
KENNETH LEVIN,                                               :
TAYLOR LEVIN,                                                :                    <u>CORRECTED</u>[1]
:                    <u>OPINION & ORDER</u>
Defendants.                          :
------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

On February 23, 2015, a federal grand jury sitting in this District returned a

three-count Indictment charging that from approximately 2005 through 2011,

Kenneth Levin, his son Taylor Levin, and several others conspired to commit mail

and wire fraud, and in fact committed mail and wire fraud, by means of a scheme

involving the sale of vending machine "business opportunities" to prospective

customers.  (Indictment, ECF No. 2.)  The Indictment alleges that defendants,

through a series of several succeeding "Business Opportunity Companies,"

defrauded and deceived hundreds of consumers interested in purchasing vending

machines by misrepresenting, <u>inter alia</u>, the locations in which the vending

machines would be placed and the profit consumers could expect to earn.  (<u>Id.</u> ¶¶ 1,

10.)  Trial in this action is set to commence on January 11, 2016.[2]

---

[1] This Opinion & Order has been corrected in the manner stated by the Court on the record on
January 19, 2016.  Specifically, the Court has deleted the clause beginning at "and that the evidence"
and ending with "his sales force" at the bottom section of page 22 of this decision, and has deleted
identical statements (that were identified by the Court on the record) in the "Ruling" column as to
GX02N-T and GX07D-T in the appended chart.

[2] On January 6, 2016, prior to the Final Pretrial Conference, the Court emailed the parties a draft
version of this decision along with the appended chart.  This decision is the final form of the Court's

On November 30, 2015, defendant Kenneth Levin and the Government filed motions in limine.[3]  (ECF Nos. 151, 156.)

Kenneth Levin seeks rulings that: (1) defendants may admit at trial portions of undercover recordings (and related transcripts) that tend to impeach the statements of co-conspirators pursuant to Rule 806 and that are necessary under Rule 106 so as not to mislead the jury, and (2) the Government be barred from admitting certain other portions of undercover recordings (and related transcripts) as well as various other documents relating to events that occurred after the date of the charged conspiracy.

The Government's motions in limine seek the following rulings: (1) the Government may admit undercover recordings (and related transcripts) and defendants should be limited to admission of recordings for which there is an applicable hearsay exception or the recordings are properly admissible under Rule 106, (2) defendants should be precluded from introducing any written contracts or disclosures provided to customers for the purpose of negating other misrepresentations, (3) several uncharged and prior "bad acts" of the defendants should be admitted as direct evidence of the conspiracy or as evidence of knowledge or intent pursuant to Rule 404(b), (4) the defendants should be precluded from

---

rulings and supersedes the draft previously provided to the parties.  Contemporaneously to filing this Opinion & Order, the Court has also emailed the parties a redline version showing the Court's revisions.  The Court notes that it has also made revisions to the explanations for its rulings in the appended chart (although it has not changed its ultimate rulings on the excerpts); the parties are advised to review the new version of the chart for the Court's final rulings.

[3] That same day, Taylor Levin moved to join in Kenneth Levin's motion.  (ECF No. 154.)  On December 16, 2015, Taylor Levin also moved to join in Kenneth Levin's opposition to the Government's motion.  (ECF No. 169.)  Taylor Levin's motions to join are GRANTED.

eliciting testimony regarding certain acts of a number of the Government's anticipated witnesses for impeachment purposes, (5) the defendants should be precluded from admitting evidence of non-fraudulent conduct (i.e. "good acts" testimony) at United Marketing and its predecessors, (6) Kenneth Levin should provide the Government with notice of any advice of counsel defense and make a preliminary showing that he can meet the requirements of the defense, and (7) the Court should adopt the Government's trial indictment proposal.

On December 14, 2015, Kenneth Levin responded to the Government's motions and also raised the issue of defendants' intention to object to any questions posed to witnesses regarding the source of their investment in the vending machine opportunities; Levin also indicated that defendants seek to preclude the Government from arguing that any customers lost their money and failed to make a profit.[4]  (ECF No. 164.)[5]  Also on December 14, 2015, the Government filed supplemental letter motions <u>in limine</u> to admit certain additional uncharged acts of Kenneth Levin and to preclude cross-examination of certain of the Government's other anticipated witnesses.  (ECF No. 166.)  Kenneth Levin responded to the Government's supplemental motions on December 21, 2015.  The Government filed a reply brief as to its own motions (which the Court also construes as the Government's opposition to Kenneth Levin's motions <u>in limine</u>) on December 21,

---

[4] The Court addressed this last issue on the record at the Final Pretrial Conference.

[5] Kenneth Levin's opposition brief also responded to the Government's motions regarding the issues of whether defendants may admit evidence of written contracts or disclosures made to consumers and evidence of non-fraudulent conduct.  Based on Levin's responses, on December 16, 2015 the Court ordered defendants to proffer how they intended to use such evidence at trial.  (ECF No. 168.) Kenneth Levin submitted the requested proffer on December 22, 2015 (ECF No. 178), a portion of which was submitted solely for <u>in camera</u> review.

2015.  (ECF No. 174.)  In response to several Orders from the Court relating to certain of the issues raised in the parties' briefing (primarily relating to clarifications or updates as to the parties' previously asserted positions), the parties submitted additional materials.[6]

This decision contains the Court's preliminary rulings in relation to the following issues: (1) the admission/preclusion of undercover recordings and related transcripts, (2) admission of evidence of prior bad acts of the defendants and co-conspirators, (3) preclusion of cross-examination of certain acts of the Government's witnesses, (4) defendants' use of written contracts or disclosures, and (5) defendants' presentation of evidence of non-fraudulent conduct.  The Court addressed certain other outstanding disputes at the Final Pretrial Conference as set forth on the record, and intends to address any remaining issues at trial.

For the reasons set forth below, the Government's motions in limine are GRANTED IN PART AND DENIED IN PART.  Kenneth Levin's motions in limine, which relate solely to the admission of excerpts of undercover recordings and related transcripts (and the Government's motions in limine relating to that issue), are the subject of separate written decisions that are set forth in the chart appended to the end of this decision (and which are accompanied and supplemented by oral rulings made on the record at the Final Pretrial Conference).

---

[6] Those additional submissions pertained to, inter alia, the parties' disputes relating to undercover recordings and transcripts, cross-examination of certain acts of the Government's anticipated witnesses, and the scope of defendants' intention to argue an advice of counsel defense.

I.      BACKGROUND[7]

The Indictment charges Kenneth Levin with serving as the founder and
president of, and Taylor Levin employed by, a series of companies that perpetrated
a fraudulent scheme grossing over $11 million and involving more than 1,000
consumers between 2005 and 2011.  (Indictment ¶¶ 3-4, 10.)  The Indictment
alleges that defendants executed the scheme along with a number of other co-
conspirators.  (E.g., id. ¶¶ 18-21.)  The Indictment alleges that defendants' scheme
involved convincing consumers to spend hundreds or thousands of dollars to
purchase what the consumers believed were lucrative vending machine "business
opportunities" that involved the placement of modern vending machines in pre-
determined locations that would earn profits in a relatively short period of time.
(Id. ¶¶ 10, 13, 21-22.)

The Indictment alleges that in contrast to what the consumers were told,
they received—at their homes or at loading docks, rather than in the pre-
determined locations to which they expected the machines to be delivered—cheaply-
made, mostly mechanical vending machines that were hard to place and ultimately
netted little to no profit.  (Id. ¶¶ 16-17.)  The Indictment alleges that defendants
perpetrated the scheme and defrauded their customers—who were located
throughout the United States and Canada—by phone, email, and regular mail.  (Id.
¶¶ 28, 30.)  The Indictment also alleges that defendants regularly change the name

---

[7] The Court assumes familiarity with the facts underlying this action.  This section sets forth only
those facts that are relevant to the motions in limine.  That each statement is not prefaced with the
word "alleged" should not be taken as the equivalent of a finding or necessarily reflective of an
admission.

of the Business Opportunity Companies to avoid association with previous complaints and to evade a federal law that required a disclosure statement including, inter alia, a list of past customers to be sent to prospective customers. (Id. ¶ 22.)

For perpetrating this scheme, the Indictment charges Kenneth Levin and Taylor Levin with three counts, including: (1) conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, (2) mail fraud, in violation of 18 U.S.C. § 1341, and (3) wire fraud, in violation of 18 U.S.C. § 1343.  (See id.)

The Government proffers that it expects the evidence at trial will establish that defendants' business functioned under a succession of different corporate names (at least five over the duration of the charged conspiracy), including most recently "United Marketing."  (Gov't Mem. in Support of Motions in Limine ("Gov't Opening Mem.") at 3, ECF No. 157.)  The Government expects the evidence will show that Kenneth Levin changed his company's name frequently to avoid having to disclose to potential customers the names and contact information of recently defrauded customers and to limit the impact of online complaints.  (Id.)  The Government expects the evidence will show that Kenneth Levin employed several sales representatives to carry out the scheme, including his son, defendant Taylor Levin (who held himself out as manager when Kenneth Levin was away), and several other co-conspirators who have pleaded guilty in this case.  (Id.)  The Government further expects the evidence will show that Kenneth Levin and his employees repeatedly claimed that if customers purchased certain vending

machines, the customers would be able to place those machines in pre-approved, high-volume locations and would receive assistance from qualified, trained locators in establishing, maintaining and operating a successful vending machine business. (Id. at 4.)  The Government expects that the evidence will show that these claims materially misrepresented the true state of facts.

The Government proffers that its evidence at trial will fall into four broad categories: (1) undercover recordings of the defendants and their co-conspirators engaging in the fraudulent scheme and describing it to an individual who was interviewing and training for a job at United Marketing as a sales representative, (2) testimony of cooperating witnesses, including former sales representatives and locators who worked for defendants, regarding their role in the fraud and their interactions with the defendants and their co-conspirators, (3) testimony of consumers who will describe the various false statements made to them to induce them to purchase vending machine "business opportunities," and (4) documentary evidence, including materials taken from United Marketing's offices on or about April 28, 2011 and documents obtained by grand jury subpoena from businesses associated with United Marketing.  (Id. at 4-5.)  As noted above and as further set forth below, the Government also seeks to admit evidence of several uncharged acts of Kenneth Levin and Taylor Levin either as direct proof or as evidence of knowledge or intent pursuant to Rule 404(b).

II.     APPLICABLE LEGAL PRINCIPLES

     A.     <u>Standard on a Motion In Limine</u>

"The purpose of an <u>in limine</u> motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996) (quotation marks omitted); <u>see also</u> <u>Highland Capital Mgmt., L.P., v. Schneider</u>, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). "The trial court should exclude evidence on a motion <u>in limine</u> only when the evidence is clearly inadmissible on all potential grounds." <u>United States v. Ozsusamlar</u>, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (citations omitted).

A court's ruling on a motion <u>in limine</u> "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [party's] proffer." <u>Luce v. United States</u>, 469 U.S. 38, 41 (1984). <u>In limine</u> rulings occur pre-trial, and that fact has significance. The evidence at trial may come in differently than anticipated, altering the solidity of the proffered basis for a pre-trial ruling. The Court therefore invites any party who believes that the factual record as developed at trial supports a revised ruling to bring such an application in a timely manner.

B.    <u>Relevant Evidence</u>

Rule 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401; <u>see also</u> <u>Old Chief v. United States</u>, 519 U.S. 172, 178 (1997). "The fact to which the evidence is

directed need not be in dispute." <u>Old Chief</u>, 519 U.S. at 179 (quoting Fed. R. Evid. 401 advisory committee's note) (internal quotation mark omitted).

To be relevant, evidence need not constitute conclusive proof of a fact in issue, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." <u>McKoy v. North Carolina</u>, 494 U.S. 433, 440 (1990) (quoting <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 345 (1985)) (internal quotation marks omitted); <u>see also</u> <u>United States v. Abu-Jihaad</u>, 630 F.3d 102, 132 (2d Cir. 2010).

  C. <u>"Other Act" Evidence</u>

"It is well established that evidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." <u>United States v. Gonzalez</u>, 110 F.3d 936, 942 (2d Cir. 1997) (quoting <u>United States v. Towne</u>, 870 F.2d 880, 886 (2d Cir. 1989)) (alterations and internal quotation marks omitted); <u>United States v. Kassir</u>, No. 04 Cr. 356(JFK), 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009).  Such evidence is direct evidence of a crime.  <u>See</u> <u>Kassir</u>, 2009 WL 976821, at *2.  Where a conspiracy has been charged, "uncharged acts may be admissible as direct evidence of the conspiracy itself." <u>United States v. Diaz</u>, 176 F.3d 52, 79 (2d Cir. 1999).  A Rule 404(b) analysis is, however, prudent where it is not manifestly clear that the

evidence in question is proof of the charged crime.  United States v. Cummings, 60

F. Supp. 3d 434, 437 (S.D.N.Y. 2014).

> Rule 404(b) provides:
>
> (1) Prohibited Uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

Fed. R. Evid. 404(b).  "Extrinsic acts evidence may be critical to the establishment

of the truth as to a disputed issue, especially when that issue involves the actor's

state of mind and the only means of ascertaining that mental state is by drawing

inferences from conduct."  Huddleston v. United States, 485 U.S. 681, 685 (1988).

The Second Circuit evaluates 404(b) evidence under an inclusionary approach

that allows evidence for any purpose other than to show a defendant's criminal

propensity.  United States v. McCallum, 584 F.3d 471, 475 (2d Cir. 2009); see also

United States v. Paulino, 445 F.3d 211, 221 (2d Cir. 2006).  Courts therefore may

allow evidence of other acts by the defendant if the evidence is relevant to an issue

at trial other than the defendant's character and if the risk of unfair prejudice does

not substantially outweigh the probative value of the evidence.  United States v.

Morrison, 153 F.3d 34, 57 (2d Cir. 1998); see also United States v. Garcia, 291 F.3d

127, 136 (2d Cir. 2002).  This inclusionary approach does not, however, invite the

Government "to offer, carte blanche, any prior act of the defendant in the same

category of crime."  McCallum, 584 F.3d at 475 (quoting Garcia, 291 F.3d at 137).

In considering the admissibility of evidence pursuant to Rule 404(b), a court must consider the following:

- Is the evidence relevant?

- Is the evidence offered for a proper purpose—that is, does it go to something other than the defendant's character or criminal propensity?

- Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice?

- Has the court administered an appropriate limiting instruction?

McCallum, 584 F.3d at 475 (citation omitted).

For example, proof of prior bad acts may be admissible to show identity where the defendant "used very similar methods in the charged crime and the prior bad act." United States v. Tubol, 191 F.3d 88, 95 (2d Cir. 1999). Evidence of extrinsic acts is also admissible to prove knowledge and intent. See United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996); United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987). "Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993) (citation omitted). Another "legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case" and can assist the jury in understanding the relationship of trust between the coconspirators. United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996) (citations omitted); see also United States v. Mercado, 573

F.3d 138, 141 (2d Cir. 2009) (prior bad acts evidence may be relevant to show the development of the relationship between defendants, provide background to the events alleged, and enable the jury to understand the complete story of the crimes charged). Completing the story of the crimes is also a legitimate use of "other act" evidence. See United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense.").

Once the Government has proffered a proper purpose for "other act" evidence, the Court must then determine whether the other act is in fact probative of the crimes charged. In this regard, the Government must identify a similarity or connection between the other act and an element of a charged offense. See United States v. Brand, 467 F.3d 179, 197 (2d Cir. 2006). To be relevant, the other act must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw an inference from the act that the state of mind of the actor is as the proponent of the evidence asserts. United States v. Curley, 639 F.3d 50, 57 (2d Cir. 2011); see also United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987). The court abuses its discretion if the "chain of inferences" necessary to connect the other act with the charged crime is "unduly long." Curley, 639 F.3d at 57. While the duration of elapsed time between two events can detract from the probative value of the prior event, see Garcia, 291 F.3d at 138, the "temporal remoteness of . . . acts does not preclude their relevancy," Curley, 639 F.3d at 59.

It is, however, improper to receive evidence ostensibly as probative of knowledge and intent when it is in reality "propensity evidence in sheep's clothing." McCallum, 584 F.3d at 477.  The Government may not use Rule 404(b) to "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." Huddleston, 485 U.S. at 689.  Under Rule 404(b), other act evidence is only admissible if it is relevant, and it is only relevant "if the jury can reasonably conclude that the act occurred and that the defendant was the actor."  Id.

D.    Rule 403

Rule 403 authorizes the exclusion of relevant evidence when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; see also Old Chief, 519 U.S. at 180.  "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives."  Old Chief, 519 U.S. at 184.  "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk."  Id. at 182-83.  In making this assessment, a court should take into consideration the "offering party's need for evidentiary richness and narrative integrity in presenting a case."  Id. at 183.

13

Rule 403 is concerned with "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence."  United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)) (internal quotation marks omitted).

Several courts have found that "other act" evidence is not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged.  United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990); see also Curley, 639 F.3d at 59 (finding that the district court did not err in finding that the probative value of prior acts of domestic violence with similar characteristics to the charged conduct outweighed the potential prejudicial effect when the prior acts were no more sensational than the charged conduct); Abu-Jihaad, 630 F.3d at 132-33 (finding that conversations referencing uncharged support of jihad were "no more inflammatory than the charges alleged in the indictment"); Mercado, 573 F.3d at 142 (upholding a Rule 403 determination where the challenged evidence was "not especially worse or shocking than the transactions charged" and where the district court instructed the jury as to what inferences could properly be drawn from such evidence).

E.     Impeachment Evidence

Rule 609 governs the circumstances under which evidence of a criminal conviction of a witness may be introduced to attack the witness's character for truthfulness.  Rule 609(a)(1)(A) provides that, where the witness is not a criminal defendant, a court must admit evidence of the witness's criminal conviction for a crime punishable by death or imprisonment for more than one year where the

probative value is not substantially outweighed by the prejudicial effect.  Fed. R. Evid. 609(a)(1)(A).  Under Rule 609(a)(1)(B), which applies when the witness is a criminal defendant, evidence of such a conviction must be admitted if the probative value of the evidence outweighs its prejudicial effect to the defendant.  Fed. R. Evid. 609(a)(1)(B).  In exercising that discretion, a prime factor is whether the crime, by its nature, is probative of a lack of veracity.  United States v. Ortiz, 553 F.2d 782, 784 (2d Cir. 1977).

Rule 609(a)(2) provides that a court must admit evidence of any crime, regardless of the available punishment, if the court "can readily determine that establishing the elements of the crime required proving—or the witness admitting—a dishonest act or false statement.'  Fed. R. Evid. 609(a)(2).  There is a presumption that "the essential facts of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed, are included within the evidence that is to be admitted for impeachment purposes."  United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005) (quotation marks omitted).

Notwithstanding the provisions of Rule 609(a), Rule 609(b) provides that if more than 10 years have passed since the later of the witness's conviction or release from confinement, evidence of the conviction is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect and the proponent gives the adverse party reasonable written notice of the intent to use the evidence.  Fed. R. Evid. 609(b).  The Second Circuit

has recognized that "Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances." <u>Zinman v. Black & Decker (U.S.), Inc.</u>, 983 F.2d 431, 434 (2d Cir. 1993) (quotation marks omitted).

Rule 608 governs the circumstances under which evidence <u>other than</u> the criminal conviction of a witness may be introduced to attack the witness's character for truthfulness. Rule 608(b) provides that, except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. Fed. R. Evid. 608(b). On cross-examination, a court may allow such specific instances to be inquired into to the extent probative of the character for truthfulness or untruthfulness of the witness or another witness whose character the witness being cross-examined has testified about. Fed. R. Evid. 608(b). "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." <u>United States v. Crowley</u>, 318 F.3d 401, 417 (2d Cir. 2003) (quotation marks and alterations omitted).

## III.   DISCUSSION

### A.   <u>Undercover Recordings / Transcripts</u>

As indicated above, the parties' motions <u>in limine</u> raise numerous issues relating to the admission and/or preclusion of undercover recordings and related transcript excerpts. Some of the disputed excerpts relate to prior "bad acts" of the

defendants and others, while other excerpts raise entirely different issues. Because the parties' initial briefing did not identify the specific excerpts in dispute, on December 22, 2015 the Court issued an Order requiring the parties to identify all of the excerpts as to which they continued to have disagreements along with the parties' respective positions as to why the evidence should be admitted or precluded. (ECF NO. 180.) The parties subsequently provided the requested information by identifying the objected-to excerpts, along with a spreadsheet that contained the defendants' position and grounds for objecting, the Government's preliminary responses, and the defendants' replies. The Government also submitted a final reply to defendants' responses in the form of a letter. For the sake of clarity in light of the numerous excerpts in dispute, the Court here sets forth its rulings on the disputed recordings and transcripts in the form of a chart that is appended to this decision. (The rows in the chart correspond to the rows in the spreadsheet submitted by the parties.) The Court has also supplemented the written rulings included in the chart with oral rulings (more broadly applicable to categories of excerpts) at the Final Pretrial Conference.

One general point applicable to numerous of the excerpts is whether there is a sufficient basis to find that the elements of Rule 801(d)(2)(E) have been met. <u>See</u> Fed. R. Evid. 801(d)(2)(E). There is. As to each excerpt where there is an issue, the Court finds that the declarant(s) (other than the cooperating witness), were involved in a conspiracy with both defendants, and that the statement was in furtherance of an unlawful scheme to defraud. The Court's findings are based on a

17

preponderance of the evidence contained in the materials submitted to the Court.

United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999).[8]

     B.     <u>Uncharged Acts Evidence</u>

     The Government's motions <u>in limine</u> identify numerous uncharged "bad acts" of Kenneth Levin and Taylor Levin that the Government seeks to admit evidence of as either direct proof of the charged conspiracy or to prove defendants' knowledge or intent, or to provide background of the conspiracy, pursuant to Rule 404(b).  (Gov't Opening Mem. at 24-44.)  The Government asserts that this evidence is significant to its case because it expects defendants to focus on the elements of knowledge and intent in presenting their defense at trial.  As to Kenneth Levin, the Government seeks to admit evidence of his alleged participation in other fraudulent schemes stretching back to the 1980s, as well as more recent false statements that he made.  As to Taylor Levin, the Government seeks to admit evidence of a recent false statement and evidence relating to, <u>inter alia</u>, his past convictions and drug use (as well as the drug use of other co-conspirators).  Finally, the Government's motions indicate that it seeks to admit evidence of past convictions of other employees of the Business Opportunity Companies.

     The full scope of the format and context in which the Government seeks to offer the above evidence is not made clear in its motions.  To the extent that the

---

[8] To the extent that defendants argue that statements admitted pursuant to Rule 801(d)(2)(E) may not be used as evidence to support the substantive mail and wire fraud counts, the Court rejects that argument.  There is ample authority to support the proposition that a co-conspirator's statements are admissible as a vicarious admission of the defendant even when no conspiracy has been charged in the indictment.  <u>United States v. Russo</u>, 302 F.3d 37, 45 (2d Cir. 2002); <u>United States v. Maldonado-Rivera</u>, 922 F.3d 934, 962 (2d Cir. 1990).

Government seeks to admit evidence of prior bad acts by means of the undercover recordings and related transcripts that the parties have provided to the Court, the Court addresses the admissibility of that evidence in the chart referenced above that is appended at the end of this decision.  To the extent that the Government seeks to admit evidence of these prior bad acts by other means (e.g. cross-examination of Kenneth Levin if he elects to testify, admission of the transcripts of Kenneth Levin's prior guilty pleas), the Government should adhere to the principles outlined below.

To sum up the Court's analysis below, the Government's request is broader than what the Court will allow to be admitted as direct evidence of the conspiracy or under Rule 404(b).  At least some of the purported "bad acts" are either not sufficiently similar to the charged conspiracy to be relevant to the issues claimed, or, to the extent they are relevant, that relevance is substantially outweighed by the potential for unfair prejudice (particularly to the extent that it becomes cumulative) and the likelihood that the jury would perceive the evidence as showing defendants' propensity to engage in fraud.

1.     Kenneth Levin's Prior Fraudulent Schemes

As to "bad acts" involving Kenneth Levin's past fraudulent schemes, the Government seeks to admit evidence of two decades-old convictions, as well as other fraudulent conduct spanning from the mid-1990s up until Levin's arrest in 2015. As noted in the appended chart, certain undercover recordings involve discussion of these past schemes that is interspersed with explanation of the vending machine business that underlies the charged conspiracy.  Based on the Court's review of the

specific format and context of these conversations as demonstrated in the transcript excerpts, a reasonable inference may be drawn that the charged scheme is a new iteration or continuation of prior behavior such that the past fraudulent conduct is part and parcel of the defendants' scheme and relevant to show defendants' preparation, lack of mistake and intent under Rule 404(b). The context of these conversations is a significant factor in the Court's determination that these recordings are probative under Rule 404(b).

On the other hand, it is not clear whether the Government seeks to introduce other evidence relating to these past fraudulent schemes or what such evidence would consist of. To the extent that the Government does seek to introduce evidence of "bad acts" that is in addition to the undercover recordings and transcripts, the Court doubts that such evidence would have the same probative value for Rule 404(b) purposes. The Court believes, furthermore, that the recordings and transcripts that the Court is allowing the Government to introduce already provide ample evidence for the Rule 404(b) purposes that the Government believes are relevant to rebut defendants' defenses. At a certain point, the probative value of evidence of Kenneth Levin's past schemes is substantially outweighed by the risk of unfair prejudice and the possibility that the jury will view the evidence as probative of an improper purpose—the propensity to engage in fraud. The Court believes that the risk that the jury will construe evidence of Kenneth Levin's past fraudulent conduct as showing his propensity to commit fraud increases as the number of past fraudulent acts that the Government introduces

increases.  The Government must proceed with caution because of the potential cumulative effect of such evidence.  That being said, the Court cannot rule on the admissibility of prior bad acts evidence without knowing the format and context in which the Government intends to present such evidence.  Therefore, if the Government seeks to present additional evidence of Kenneth Levin's past fraudulent schemes beyond the undercover recordings and transcripts, the Government should provide a proffer as to the form of such evidence and the past fraudulent scheme(s) to which it relates.

While the Court will allow the Government to present evidence of past "bad acts" in the form of the undercover recordings and transcripts (and may allow the Government to offer certain additional evidence if admissible under Rules 404(b) and 403), the Court has ongoing concerns as to how the Government might use and argue such evidence in its presentation to the jury.  Although the Government asserts that it seeks to admit evidence of Kenneth Levin's past fraudulent conduct for the purpose of countering Levin's defenses of lack of knowledge and intent, there are several instances in the Government's briefing that raise concerns about whether the evidence will serve as "propensity evidence in sheep's clothing." McCallum, 584 F.3d at 477.  The Government's arguments at times suggest that it intends to use the evidence to pursue a "once a fraudster, always a fraudster" theory; that is a propensity argument that is improper under Rule 404(b).

Arguments framed in this way, if presented at trial, create a risk that the jury would improperly view Levin's prior fraudulent conduct as evidence of a

propensity to commit fraud.  That risk may be mitigated, although not necessarily eliminated, by a limiting instruction as to the proper uses of the evidence.  <u>See</u> <u>Curley</u>, 639 F.3d at 57 ("Although the law presumes that juries follow limiting instructions, these instructions only minimize the evidence's prejudicial effect.  A limiting instruction does not invariably eliminate the risk of prejudice notwithstanding the instruction." (quotation marks and citations omitted)).  To ensure that there is no jury confusion as to the proper uses of this evidence, the Court does intend to issue to the jury a special limiting instruction on this topic.  If defendants have a view as to the language to be used in such an instruction, the Court encourages defendants to suggest particular language to the Court.

However, let there be no ambiguity: the Government should not argue (including casual statements in its opening) that these instances "go[ ] directly to [Kenneth Levin's] knowledge of right and wrong," and that "[u]nderstanding the background of the conspiracy, including how K. Levin has jumped from one consumer fraud scheme to the next, is important and proper context for the jury to understand his words."  (Gov't Opening Mem. at 38-39.)  If the Government does stray into any type of propensity argument, the Court will immediately and strongly interrupt, strike the reference and caution the jury.

Thus, the Government may reference Kenneth Levin's past schemes in its opening statement to the extent supported by undercover recordings and transcripts that the Court rules are admissible in the appended chart.  The Government should not, however, dwell on this aspect of its argument.

2.    <u>Defendants' Recent False Statements</u>

Two categories of prior "bad acts" that are not part of the undercover recordings are alleged false statements made by Kenneth Levin and Taylor Levin. Kenneth Levin's alleged false statements include statements made: (1) at a deposition in a civil action that he initiated, (2) in a certification form used to qualify reduced rent housing, and (3) in a statement to a probation officer on behalf of a sales representative at United Marketing. The Government also seeks to admit evidence of a false statement that Taylor Levin made to the Better Business Bureau regarding his relationship to Bombin' Magazine. The Government argues that this evidence is admissible under Rule 404(b) to show how strongly the defendants are motivated by greed and personal financial gain and that there was an absence of mistake in the lies that defendants told to victims; the Government also seeks to admit this evidence for purposes of impeachment should defendants take the stand at trial.

First, the Government seeks to admit evidence that Kenneth Levin falsely testified under oath at his June 17, 2014 deposition relating to a personal injury case that Levin had filed in the Supreme Court of the State of New York, <u>Levin v. Mercedes-Benz Manhattan, Inc.</u>, Index No. 108182/11. The Government asserts that Levin falsely testified that he had retired and had done so as a result of the accident at issue in the suit, he had been unable to work since the accident occurred on or about August 30, 2010 due to debilitating pain, and he had discarded all company records for United Marketing and its predecessor businesses. The Government contends that these statements directly contrast with evidence that

the Government expects to admit at trial, including undercover recordings and documents retrieved pursuant to a search in April 2011, statements made to Pretrial Services and the Court in connection with bail, and a recent production by Kenneth Levin of company documents that he appears to have maintained.

Upon review of the relevant deposition transcript (Gov't Reply Mem., Ex. D, ECF No. 174), and the Government's proffer as to what the evidence will show, the Court preliminarily agrees that Levin's deposition testimony included false statements and therefore may properly serve as impeachment evidence under Rule 608(b) should Kenneth Levin take the stand at trial.  In particular, it appears that the Government is correct, based on its assertion that in April 2011 it collected voluminous records from Levin's business, that Levin testified falsely when he stated that he did not maintain business records from United Marketing and that there really were no business records in his business.  The Court will therefore allow the Government to cross-examine Levin with the deposition testimony for impeachment purposes, but only to the extent that the Government is able to lay a proper foundation to the falsity of particular statements.  The Government should be mindful, however, that the Court only intends to allow the Government to offer this impeachment evidence to the extent that establishing the necessary foundation will not lead the Court down the path of a "trial within a trial" on a peripheral issue.

That being said, the Court is not persuaded that evidence of Levin's false statement at his deposition is also independently admissible under Rule 404(b)

should Kenneth Levin choose not to testify.  The Court does not believe that it is probative of Kenneth Levin's motive to participate in the charged scheme.  Levin's motive for personal financial gain is an insufficient basis to admit this evidence; the Government's argument appears to be directed to showing Levin's propensity to engage in fraudulent conduct.  That it may not do.

The Government also seeks to admit evidence that Kenneth Levin falsely claimed to the New York State Division of Housing and Community Renewal, Office of Rent Administration, that he earned less than $175,000 in either 2009 or 2010. In the income certification form at issue, Levin certified that "the total annual income (the total federal adjusted gross incomes as reported on the New York State income tax returns) of all persons identified . . . above" was $175,000 or less in either 2009 or 2010.  (Aff. of Juliane Balliro, Ex. B, ECF No. 165.)  The Government states that it found the certification form in Levin's office and is still in the process of confirming whether he actually filed it with state housing authorities.[9]  The Government contends that Levin's certification was false because it conflicts with undercover recordings, financial records, and statements made during Levin's personal injury lawsuit referenced above.

Based on the parties' submissions thus far, there remains an absence of clarity as to whether the income certification was in fact false.  The Government has not presented the Court with Kenneth Levin's New York State income tax returns during either of the two years at issue, and therefore the Court is unable to make a

---

[9] If the Government is unable to prove that Levin actually filed the form, this document would be inadmissible because it wouldn't be evidence of a sworn false statement.

definitive ruling as to whether Levin's certification was actually false.  If Levin's statement is in fact inconsistent with his tax records, then the statement is properly admissible as impeachment evidence should Levin take the stand.[10]  To the extent that the Government is unable to resolve the lack of clarity as to the actual falsity of the certification, the Court does not intend to allow admission of the evidence.  The Court further notes that as this issue takes several steps to "put the story together", the Court is concerned that using the certification could create a "trial within a trial" and a sideshow.  To ensure this does not occur, before any use, the Government shall proffer to the Court and defense counsel precisely how it intends to proceed; defense counsel will then proffer how it intends to respond.  The Court will then issue a final decision on this evidence.

The Government also suggests that it may seek to introduce evidence that Kenneth Levin made false statements to a probation officer on behalf of James Maffia, one of United Marketing's sales representatives.  It is unclear whether the Government identifies this false statement in its motion merely to provide further background or whether it affirmatively intends to admit evidence of that falsehood at trial.  To the extent that the Government is able to lay a proper foundation to show that Levin's statement to the probation officer was actually false, that statement is admissible for purposes of impeachment.  The Government has not yet made such a showing.

---

[10] The Court does not find persuasive Kenneth Levin's arguments that, under these circumstances, any evidence relating to the certification should be precluded on the ground that the Government failed to segregate and then unreasonably retained data that was not responsive to the search warrant.  See United States v. Ganias, 755 F.3d 125, 136 (2d Cir. 2014).

Finally, the Government also seeks to admit evidence of a false statement made by Taylor Levin, in which he claimed to the New York Better Business Bureau ("NYBBB") a lack of affiliation with, or connection to, Bombin' Magazine. The Government asserts that Taylor Levin's statements were false because he was a part owner of Bombin' Magazine, Bombin' Magazine used office space in United Marketing's offices and Kenneth Levin and/or United Marketing paid for Bombin' Magazine's expenses.  Specifically, the Government seeks to admit evidence that Taylor Levin advised the NYBBB in a February 2011 email that Bombin' Magazine was a completely unaffiliated company that merely rented office space from United Marketing but had moved out "well over a year ago."  (Gov't Opening Mem. at 29.) Defendants respond that Taylor Levin's email does not constitute impeachment evidence because "Neither company had any interest in the other and the mere fact that Taylor Levin continued to store Bombin' Magazine records at the United Marketing location after he stopped renting space is a far cry from proof that the companies were somehow affiliated."  (Levin Opp. Mem. at 13, ECF No. 164.) Essentially, defendants do not dispute that Taylor Levin's email misrepresented the facts, instead arguing that the evidence should be excluded under Rule 403. Because the Court does not believe that the relevance of Taylor Levin's misrepresentation is substantially outweighed by unfair prejudice, it is properly admissible as impeachment evidence should Taylor Levin testify at trial.  (The Court notes, however, that this is a weak point and should in all events consume no more than 3 minutes of trial time.)

3.    Taylor Levin's "Other Acts"

The Government also seeks to admit evidence that Taylor Levin used illegal drugs, was convicted of the criminal sale of a controlled substance in 2010, and participated in a substance abuse rehabilitation program after having been convicted in 2000 for receipt of stolen property.  The Government asserts that all of these events occurred at the same time that Taylor Levin was a sales representative and held himself out as a manager and vice president at United Marketing.  The Government argues that this evidence is relevant to establish background information about the conspiracy because "[a] legitimate company does not tolerate such behavior."  (Gov't Opening Mem. at 42.)  This last premise is, of course, without factual basis.

The Court concludes that the above evidence should be precluded.  This evidence is of minimal relevance because Taylor Levin's drug conviction has no similarity or connection to the charged fraudulent scheme.  The Court believes that even to the extent this evidence is relevant, that relevance is substantially outweighed by the risk of unfair prejudice under Rule 403 given its inflammatory nature against the defendant.  In light of the anticipated presentation of evidence that other employees had prior convictions (as set forth below), evidence of Taylor Levin's drug conviction and past addiction adds little to show the organization of the scheme and background of the charged conspiracy's members.  Such evidence relating to Taylor Levin would be cumulative of other "background" evidence.

4.    Other Co-Conspirators' "Bad Acts"

The Government's motion also states that it expects witnesses to testify that drug use was common at United Marketing and that almost all of its employees had "criminal problems." (Gov't Opening Mem. at 42.)  As set forth in the Court's rulings in the appended chart, evidence of drug use and prior criminal convictions must be treated differently.

As a general matter, undercover recordings relating to prior criminal convictions of co-conspirators may be probative of the organization of the charged fraudulent scheme and the plans and formula for success.  The Court therefore allows certain undercover recordings relating to prior convictions to be admitted to the extent that they do not become cumulative.  (There is, for instance, just too much prior history with respect to James Maffia.)  If the Government seeks to admit evidence of convictions beyond the recordings and transcripts, it shall provide a proffer as to the nature of those convictions and the nature of the evidence that the Government seeks to admit.  To the extent that the Government seeks to offer additional evidence of the specific convictions already mentioned in recordings, the Court notes that it would generally consider such evidence to be inadmissible as cumulative under Rule 403.

Employees' drug use, on the other hand, is irrelevant to the elements of the offense.  The Court disallows such evidence (as set forth in the appended chart) because it has minimal probative value that is substantially outweighed by the risk of unfair prejudice.  The Court is not persuaded that such evidence is probative for a permissible purpose under Rule 404(b) or as direct evidence of the charged

conspiracy.  In any event, such evidence would be precluded under Rule 403 as unduly prejudicial.

    C.    <u>Written Contracts or Disclosures</u>

The Government seeks to preclude defendants from arguing that false representations were negated by written contracts or disclosures provided to customers.  (Gov't Opening Mem. at 12.)  In defendants' opposition to the Government's motions <u>in limine</u>, defendants responded that they seek to admit evidence relating to written disclosures for purposes of establishing lack of materiality of any misrepresentations and their lack of intent to defraud.  (Levin Opp. Mem. at 4-9.)  On December 16, 2015, the Court issued an Order requiring defendants to provide a particularized proffer as to how they intended to use this evidence at trial, including which witnesses will say what and how defendants intend to use and make arguments relating to the disclaimers.  (ECF No. 168.) Defendants provided the requested proffer on December 22, 2015 (ECF No. 178), including a portion submitted solely for <u>in camera</u> review to the Court.

Although the Government's most recent submission and the public portion of defendants' proffer suggests that the parties agree that at least certain testimony relating to the written contracts is appropriate, the Court explained on the record at the Final Pretrial Conference that it is troubled by the defendants' intended uses of the written contracts and disclosures as explained in their <u>in camera</u> proffer (and in defendants' arguments at the Final Pretrial Conference).  Below, the Court supplements the oral rulings made at the Final Pretrial Conference and the "Checklist" order also issued that covers this issue.

Defendants argue that the written contracts or disclosures may be used to investigate whether particular customers were reasonably prudent in investing in defendants' business opportunities.  Defendants essentially argue that the materiality of alleged false statements is based on a subjective standard that looks to the prudence of a <u>particular</u> victim.

Defendants are correct that "materiality of falsehood" is an element of the federal mail and wire fraud statutes.  <u>Neder v. United States</u>, 527 U.S. 1, 25 (1999). Defendants are also correct that the reasonable prudence standard is pertinent to the element of materiality.  To be material for purposes of wire and mail fraud, "the information withheld either must be of some independent value or must bear on the ultimate value of the transaction."  <u>United States v. Autuori</u>, 212 F.3d 105, 118 (2d Cir. 2000) (quotation marks omitted).

Proof as to the element of materiality may come in many forms.  Defendants have several paths.  Pursuant to, <u>inter alia</u>, Rule 403, and the serious issue of confusing the jury, putting the victim on trial will not be allowed.

### D.    <u>Evidence of Non-Fraudulent Conduct</u>

The Government seeks to preclude defendants from admitting evidence of non-fraudulent conduct (i.e. "good acts") at United Marketing.  In particular, the Government seeks to bar defendants from calling customers or former employees to testify about non-fraudulent sales conduct at United Marketing.  Following defendants' terse response stating that they do not intend to offer such testimony but do intend to introduce evidence that negates an intent to defraud and rebuts evidence of their participation in a conspiracy with certain individuals, the Court

31

issued an Order requesting defendants to proffer how and in what form they intended to present such evidence.  (ECF No. 168.)  On December 22, 2015, defendants provided the requested proffer solely for <u>in camera</u> review.  Defendants' <u>in camera</u> submission details the substance of aspects of their intended defense; as a result, the Court will not here describe the contents of that submission.

Having conducted an <u>in camera</u> review of defendants' proffer, the Court finds that the evidence that defendants seek to offer is generally not the sort of improper "good acts" evidence that the Government seeks to bar.  To the extent that defendants abide by the representations contained in their proffer, the Government's motion to preclude evidence of non-fraudulent conduct is denied, subject to the comments that the Court made at the Final Pretrial Conference.  The Court will, of course, also revisit this issue to the extent that defendants attempt to present evidence that goes beyond the scope of their proffer.

E.   <u>Cross-Examination of Certain Acts of Anticipated Government Witnesses</u>

In its primary and supplemental motions <u>in limine</u>, the Government seeks to preclude defendants from cross-examining anticipated Government witnesses in relation to certain past acts of those witnesses.  (Gov't Opening Mem. at 44-54; Gov't Supp. Letter at 2-5, ECF No. 166.)  Many of these disputes were resolved in subsequent submissions of the parties.  At present, defendants do not oppose the Government's requests to preclude cross-examination as to certain acts of Victim 4, Victim 8, Cooperator 6, and Victim 15.

As to Victim 7, defendants request a brief voir dire of the witness prior to the witness's testimony.  The Court hereby orders the Government to provide a proffer as to the information requested by defendants.  As to the "Civilian Witness", defendants request complete disclosure and the opportunity to address the issue following disclosure.  (See ECF No. 190.)  The Government shall provide defendants with a general statement of the topic as to which the Government seeks to preclude cross-examination (in other words, without going into detail or identifying the witness to whom the information applies).  After disclosure of this high-level overview, the parties shall inform the Court whether defendants oppose the Government's request.

The remaining disputes thus relate only to certain acts of Victim 11 and Victim 18.  As set forth below, the Court concludes that cross-examination as to these acts for purposes of impeachment must be precluded.

As to Victim 11, defendants state that they seek to elicit testimony relating to Victim 11's 2009 conviction of the felonies of enticing or luring a child by various methods, criminal attempt to commit aggravated sexual assault and criminal attempt to endanger the welfare of a child, for which Victim 11 was sentenced to a period of incarceration of three years.  The Government proffers that the crime involved an attempt by Victim 11 to lure or entice via computer messages an undercover police officer posing as an adult woman to meet at a park and then go to a hotel, with the purpose to commit a criminal offense against the adult woman's daughter.  Because this conviction occurred within the last ten years and was for a

crime punishable by imprisonment of more than one year, it must be admitted as impeachment evidence unless its probative value is substantially outweighed by the risk of unfair prejudice.  Fed. R. Evid. 609(a)(1); see Fed. R. Evid. 403.  The Court concludes that because the crime at issue is only minimally probative of truthfulness or untruthfulness, and the nature of the crimes are inflammatory, evidence of the conviction for impeachment purposes should be precluded under Rule 403.  The temporal proximity of Victim 11's conviction to his purchase of the business opportunity is entirely irrelevant.

Defendants also seek to elicit impeachment testimony regarding Victim 18's 2014 conviction for misdemeanor deadly conduct, which involved an 87-year old victim and an element of the offense is reckless use of a weapon.[11]  Because the offense of conviction was not punishable by more than one year of imprisonment and the crime did not involve a dishonest act or false statement, the Court concludes that evidence of this conviction for impeachment purposes should be precluded.  See Fed. R. Evid. 609(a).  Again, the temporal proximity of Victim 18's conviction to his purchase of the business opportunity is irrelevant.

F.    Trial Indictment Redactions

As the Court stated at the Final Pretrial Conference, the Court intends to resolve the issue of whether to redact a copy of the Indictment for the jury after the commencement of trial.  For now, the Court observes that it is unlikely to strike portions of the Indictment.  The Court instead intends to instruct the jury, as the

---

[11] Defendants do not seek to introduce Victim 18's 1993 conviction or 1994 arrest for using a minor to traffic in heroin.  Because these crimes are more than ten years old, the Court would preclude cross-examination as to these acts in any event.  See Fed. R. Evid. 609(b).

Court typically does, that the fact of indictment is not evidence or proof of the defendants' guilt and that the jury should give no weight to the fact that an indictment has been returned against the defendants.

IV.    CONCLUSION

For the foregoing reasons, the Government's motions in limine are GRANTED IN PART AND DENIED IN PART.  The remainder of the issues raised in the Government's motions in limine have been addressed at the Final Pretrial Conference or the Court has reserved its rulings until trial.  Kenneth Levin's motions in limine are also GRANTED IN PART AND DENIED IN PART as set forth in the appended chart.  Taylor Levin's motions to join in Kenneth Levin's motions in limine and his opposition to the Government's motions in limine are GRANTED.

The Court's preliminary rulings as to the objected-to evidence are set forth above.  To preserve any objections, the defendants must make an oral objection if and when a particular piece of evidence is in fact offered at trial.  If the defendants do not object, the Court will assume that the defendants agree with the Court's rationale as set forth herein and withdraw their objections.

The Clerk of Court is directed to terminate the motions at ECF Nos. 151, 154 and 169.

SO ORDERED.

Dated:      New York, New York
            January 8, 2016

_____
KATHERINE B. FORREST
United States District Judge

| Court's Rulings on Admissibility of Recording Excerpts | | |
|---|---|---|
| Group ID | Transcript Reference | Ruling |
| GX02M-T | TR(U)_000179-80 | Allow all except p. 179, lines 21-22 and p. 180, lines 1-2.  The conversation is relevant because it explains the relationship between the locators and United Marketing. Defendants withdrew remainder of objection. |
| GX02N-T | TR(U)_000198-99 | Allow p. 198; preclude p. 199.  It is relevant to show how the business was organized to succeed.  Part of the scheme is to make misrepresentations to victims to get them to part with their money quickly.  The conversation also goes to state of mind with respect to whether defendants intended to set up a successful fraudulent business.  It is circumstantial evidence of whether Kenneth Levin took precautions to avoid fraud when he hired felons.  There is a reasonable inference that Kenneth Levin would know of his employees' work history.  It doesn't matter that Taylor Levin lacked the authority to hire.  P. 199 is precluded as unduly prejudicial and irrelevant. |
| GX02O-T | TR(U)_000208-09 | Allow.  Backdating of the contracts is relevant to the pressure applied to customers with respect to timing/urgency of purchasing the business opportunity.  The Government should, however, be careful of calling the backdating practice unlawful.  It is not unduly prejudicial under Rule 403. |
| GX04A-T | TR(U)_000216-18 | Allow.  Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX04E-T | TR(U)_000226-30 | Allow.  Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference).  To the extent that the Government does not play the entire excerpt, the defendants may decide whether they care or if they wish to include the whole excerpt under the rule of completeness. |
| GX04F-T | TR(U)_000231 | Allow. Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX04G-T | TR(U)_000233-34 | Allow. Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |

| Group ID | Transcript Reference | Ruling |
|----------|---------------------|--------|
| GX04I-T | TR(U)_000238-40 | Allow.  The question is whether the context is sufficient to lay a foundation as to whether the unidentified male speaker is a co-conspirator.  The Court determines that it is.  The Court's determination is based on the content of the discussion (laying out the pitch). This is part of the recording with Brown that Spinelli wired inside United Marketing talking to employees / being trained. |
| GX04J-T | TR(U)_000243-44 | Allow. Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX04K-T | TR(U)_000246-48 | Allow.  Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX04N-T | TR(U)_000274 | Allow.  Defendants argue that Reed was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX04P-T | TR(U)_000287 | Allow. There is a sufficient basis to conclude that the statements were made in furtherance of the conspiracy. Furthermore, defendants withdrew their objection and asked only for a limiting instruction. |
| GX04Q-T | TR(U)_000291-92 | Allow.  There is a sufficient basis to conclude that the statement is made in furtherance of the conspiracy. Discussion amongst co-conspirators about how to deal with customer complaint issue. Explains internal working of conspiracy. |
| GX04S-T | TR(U)_000300-04 | Allow.  There is a sufficient basis to conclude that the statement is made in furtherance of the conspiracy. It is an explanation of a different pitch style that involves different lies. |
| GX04U-T | TR(U)_000308-17 | Allow.  Same as ruling on GX02N-T above. Also, defendants argue that Maffia was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference).  It is relevant to how the scheme was designed to succeed.  Taylor Levin's statement "perfect candidate for selling vending machines" is highly probative.  (Page 311.)  With respect to defendants' Rule 403 objection, it is no more inflammatory than the acts charged in the indictment and the probative value of the excerpt is not outweighed by the potential for unfair prejudice. |

| Group ID | Transcript Reference | Ruling |
|---|---|---|
| GX04V-T | TR(U)_000321-22 | Allow.  Relevant to show how the scheme was organized in that conspirators were incented to participated through tax fraud / reporting low income.  It provides background on the conspiracy and supports an inference that the defendants fostered a culture of engaging in fraudulent conduct.  The Court rejects defendants' Rule 403 objection; the excerpt is probative of issues in dispute (organization and existence of conspiracy) and no more inflammatory than the charges here. |
| GX04W-T | TR(U)_000327 | Allow.  Shows state of mind of co-conspirator.  Co-conspirator belief as to whether he is committing fraud is highly relevant.  Few statements are more relevant. |
| GX04X-T | TR(U)_000329-31 | Allow only p. 329, lines 5-22.  Preclude the rest as cumulative.  Also, defendants argue that Maffia was not a charged co-conspirator but it is not necessary for the declarant to be charged, so long as the Court makes appropriate preliminary findings and subject to the Government laying the appropriate foundation. It is relevant to how the scheme was designed to succeed. With respect to Rule 403, it is no more inflammatory than the acts charged and the probative value is not outweighed by the potential unfair prejudice. |
| GX04Y-T | TR(U)_000336-38 | Allow. Defendants argue that Maffia was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX04ZA-T | TR(U)_000353-54 | Preclude. This is relevant as discussed previously, but now it is cumulative and subject to exclusion under Rule 403. |
| GX04ZB-T | TR(U)_000355-57 | Preclude under Rules 401 and 403.  Any de minimis probative value is substantially outweighed by its prejudicial effect. |
| GX04ZC-T | TR(U)_000359-61 | Allow. It is relevant because this is part and parcel of how to incent victims to commit money with a sense of urgency, possibly  through tax fraud.  (From the context, Maffia really means "pre-date" checks, not post-date; the point is to lie as to the real date the checks were written.)  Also, this connects Kenneth Levin to knowing about the fraud and rebuts the claim that Kenneth Levin ran a clean shop. |
| GX06A-T | TR(U)_000385-87 | Allow, except for p. 387, lines 7-10.  The locator, Dave Evans, is a co-conspirator and the Court has found by a preponderance of the evidence (as set forth on the record at the Final Pretrial Conference) that the statement was made in furtherance of the conspiracy. |

| Group ID | Transcript Reference | Ruling |
|----------|---------------------|--------|
| GX06B-T | TR(U)_000388-91 | Allow.  The locator, Dave Evans, is a co-conspirator and the Court has found by a preponderance of the evidence (as set forth on the record at the Final Pretrial Conference) that the statement was made in furtherance of the conspiracy. |
| GX06C-T | TR(U)_000392-93 | Allow.  The locator, Dave Evans, is a co-conspirator and the Court has found by a preponderance of the evidence (as set forth on the record at the Final Pretrial Conference) that the statement was made in furtherance of the conspiracy. |
| GX06D-T | TR(U)_000397-99 | Allow.  The locator, Dave Evans, is a co-conspirator and the Court has found by a preponderance of the evidence (as set forth on the record at the Final Pretrial Conference) that the statement was made in furtherance of the conspiracy. |
| GX06E-T | TR(U)_000417-19 | Allow.  The locator, Dave Evans, is a co-conspirator and the Court has found by a preponderance of the evidence (as set forth on the record at the Final Pretrial Conference) that the statement was made in furtherance of the conspiracy. |
| GX07A-T | TR(U)_000429 | Allow.  This is direct evidence of the background to the conspiracy and who the co-conspirators are.  It is a co-conspirator statement made in furtherance of the conspiracy because it involves telling a new employee that they have experience in business opportunities area and suggests this scheme is a continuation of prior conduct.  Rule 403 does not bar admission because the excerpt is no more inflammatory than the charges |
| GX07B-T | TR(U)_000436-37 | Allow.  Same as above.  (This excerpt involves an explanation of the contrast between this scheme and others and discusses the role of locators.) |
| GX07C-T | TR(U)_000449-53 | Allow.  This is highly relevant, as it involves an explanation of setting up of this scheme versus others, that customers are never happy, and the false statements used to carry out the scheme.  It is not speculation because it is based on experience and knowledge of the industry (that the business was not selling the national average).  It is not inadmissible under Rule 403 -- its prejudice is no more than supporting the Government's claims. |
| GX07D-T | TR(U)_000454-55 | Allow only p. 454, line 13-22 (as the rest is vague and confusing).  Personal background of co-conspirators is relevant to show how the business was organized to succeed.  Part of the scheme is to make misrepresentations to victims to get them to part with their money quickly.  It also goes to their state of mind and intention to set up a successful fraudulent business.  It is not unduly prejudicial under Rule 403. |

| Group ID | Transcript Reference | Ruling |
|---|---|---|
| GX07E-T | TR(U)_000457-58 | Allow.  This is certainly relevant and it does not constitute an improper opinion or speculation.  It involves Kenneth Levin's conversations with a new hire (the cooperating witness) and the Court finds that it was in furtherance of the conspiracy.  Kenneth Levin discusses the pitch and adopts the "we have two routes available" line.  There is no unfair prejudice under Rule 403. |
| GX09A-T | TR(U) _000612-15 | Allow.  It is relevant because this is part and parcel of how to incent victims to commit money with a sense of urgency, possibly through tax fraud.  (Maffia really means "pre-date" checks, not post-date; the point is to lie as to real date the checks were written.)  Also, this is probative of whether Kenneth Levin knew about the fraud.  It is not unduly prejudicial under Rule 403. |
| GX09C-T | TR(U)_000623-25 | Preclude.  Cumulative under Rule 403. |
| GX11P-T | TR(U)_000706-08 | Allow.  Direct evidence of Kenneth Levin's participation and was made in furtherance of the conspiracy.  Kenneth Levin discusses pitch and how to land the customer.  It refers to Kenneth Levin's use of contracts.  There is no unfair prejudice under Rule 403. |
| GX01C-T | TR(U)_000032-39 | Unclear - the parties need to clarify their positions.  (Objection basis is "Starts in the middle of pitch" which doesn't make sense.) |
| GX02L-T | TR(U)_000173-77 | Allow.  Relevant to history and background of locators.  The role they have in the business, the issues with them.  Locators are integral to the scheme.  In furtherance of the conspiracy because discussing the role of locators with the new hire. |
| GX04C-T | TR(U)_000219-25 | Allow.  Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX04H-T | TR(U)_000234-36 | Allow.  Defendants argue that Brown was not a charged co-conspirator but it is not necessary for the declarant to be charged given that the Court made appropriate preliminary findings (as set forth on the record at the Final Pretrial Conference). |
| GX08I-T | TR(U)_000498-502 | Preclude.  Just venting about particular customers.  Not relevant. |
| GX08J-T | TR(U)_000507-08 | Preclude.  Irrelevant.  Not needed for completeness. |
| GX08L-T | TR(U)_000524-28 | Allow.  It is relevant because this is part and parcel of how to incent victims to commit money with a sense of urgency, possibly through tax fraud.  Also, this probative of whether Kenneth Levin ran a clean shop.  Not unduly prejudicial under Rule 403. |
| GX11H-T | TR(U)_000676-80 | Allow.  Directly relevant.  Concerns Kenneth Levin discussing how to have customers mislead banks to get financing; constitutes part of the scheme.  Not unduly prejudicial under Rule 403. |

| Group ID | Transcript Reference | Ruling |
|---|---|---|
| GX11I-T | TR(U)_000681-82 | Allow.  Direct evidence of background of conspiracy.  Introduces the conspirator (Kenneth Levin) and seeks to entice new hire by reference to prior experience.  Provides background to next statement (shipping within 24 hours).  Probative/explanatory value outweighs the prejudicial effect of prior history.<br>Will give the jury a limiting instruction on proper use of this comment (e.g. not for propensity) for knowledge of how to run a business opportunity company and intent (getting customers to part with money quickly). |
| GX11K-T | TR(U)_000688-92 | Preclude.<br>First objection (p. 690, lines 15-20): Vague and confusing in all events; last comment is by a cooperating witness alone and not agreed to. Irrelevant.<br>Second objection (p. 692): Irrelevant (unagreed to comment could confuse jury). |
| GX11Q-T | TR(U)_000710-15 | Possibly allow.  If laughter is close in proximity on the recording and related to the cooperating witness's comment, the Court will allow it as responsive to the declarant's prior statement (it may also then be an adoptive admission).  If not close in proximity, then it is out as an unagreed to comment by the cooperating witness that could confuse the jury. |
| GX11W-T | TR(U)_000739-45 | Allow part/Preclude part.  Preclude p. 740, line 7 to p. 741 line 4.  Allow p. 741, line 5 to p. 744, line 2.  The precluded portion is an irrelevant statement by a cooperating witness of how to pitch that Levin states is not used in this scheme.  In terms of the portion allowed, it may be used as evidence of lack of mistake and intent to get customers to part with their money.  As to the remainder, this is all part of a free-flowing conversation with a new hire about how to perform his role at United Marketing and the experience and background of the boss.  Enticing the new hire with tales of prior success. |
| GX11ZG-T | TR(U)_000776-87 | Allow part/Preclude part.<br>Preclude p. 776, line 10 to p. 778, line 16. The precluded part is cumulative of Kenneth Levin's background but is farther afield from the type of scheme now before the Court.  (Other schemes that are not precluded shared characteristics of urgency to pitch, false statements.)<br>Allow p. 778, line 17 to p. 786, line 17.  The conversation is interspersed with the prior acts (such as radio stations) with connections to the vending machine business, and therefore shows preparation/lack of mistake/intent.  All involve selling customers "their dreams". |
| GX02A-T | TR(U)_000079-80 | Preclude part/Allow part.<br>Preclude p. 76 and p. 78 because these portions are not needed for completeness.  They do not add to the direct conversations regarding the national average on bulk machines.<br>Allow p. 81 because it completes the conversation on how quickly a machine could go from full to empty and what customers can expect to earn in income. |
| GX02B-T | TR(U)_000082 - 83 | Allow supplement.  The addition is appropriate to prevent a misleading impression on the issue of intent.  The excerpt discusses the type of shop being run. |
| GX02H-T | TR(U)_000121-48 | Preclude addition.  Not relevant and not needed for completeness. |
| GX08D-T | TR(U)_000477-79 | Allow supplement.  Appropriate to include to complete the conversation, for fairness, to give the jury a complete picture and to prevent misleading impressions.  Part of the atmosphere. |

| Group ID | Transcript Reference | Ruling |
|---|---|---|
| GX08R-T | TR(U) _000576-77 | Preclude addition.  Not needed for completeness of prior conversation.  In any event, the statement is not relevant. |
| GX08T-T | TR(U) _000582 | Preclude addition.  Not necessary for completeness of prior excerpt as it is unrelated. |
| GX11A-T | TR(U)_000637-38 | Allow supplements.<br>First segment (p. 636-37): needed to prevent misleading impression for jury as to Taylor Levin's role, which is discussed directly after this segment.<br>As for the locator segment (p. 639-42), it is needed for completeness.  They are discussing locators -- the cooperating witness says they're the downfall; the remainder is necessary to give Taylor Levin's response. This portion of the conversation follows directly on prior portion. |
| GX11C-T | TR(U)_000648-50 | Preclude addition.  The portion requested is a different topic. |
| GX11D-T | TR(U)_000657-60 | Preclude addition.  Relates to a different topic than segment proffered by the Government. |
| GX11F-T | TR(U)_000669 | Preclude addition.  Relates to a different topic. |
| GX11ZB-T | TR(U)_000752-55 | Allow supplement. Needed to complete the conversation on tax issue mentioned in segment proffered by the Government.  Necessary to ensure the jury is not misled. |
| GX11ZD-T | TR(U)_000763-64 | Preclude addition.  Not needed for completeness as it relates to a separate topic than the segment proffered by the Government. |
| GX11ZE-T | TR(U)_000768 | Allow part/Preclude part.<br>Allow supplement of p. 768, lines 1-9 to complete the conversation which follows. It is needed to ensure the jury is not misled.<br>Preclude supplement of p. 768, line 19 to p. 769, line 7 because it concerns a different topic. |
| GX02C-T | TR(U)_000087-89 | Allow part/Preclude part.<br>Allow p. 87, lines 16-21 because it is needed to introduce the conversation which follows and is relevant to locators and their role in the conspiracy.<br>Preclude addition of p. 92 lines 13-22 because it is not needed for completeness and deals with a different topic. |
| GX08N-T | TR(U)_000539-41 | Partial grant of defendants' objection.<br>Preclude p. 539 lines 4-8 (through word "closer").  It is cumulative and because there is no detail, the proper purpose is unclear.  The remainder of lines 8-9 are needed for completeness of what follows.<br>Preclude addition of p. 541, line 16 to p. 545, line 9 because it is not needed for completeness and addresses a different topic (training). |
| GX04M-T | TR(U)_000258-60 | Allow portion proffered by the Government.  Reed is a co-conspirator, and is discussing a pitch and how to handle complaints with the cooperating witness.<br>Preclude p. 264, line 16 to p. 265, line 3.  This portion is not necessary for completeness because it is on a different topic. |

| Group ID | Transcript Reference | Ruling |
|---|---|---|
| GX04ZD-T | TR(U)_000363-65 | Allow portion proffered by the Government only from p. 363 - p. 364, line 10 (through the word "knows").<br>Preclude remainder as cumulative and confusing.  The portion admitted is relevant to the organization of the scheme -- using an individual who identifies as a "con-artist" for success of scheme, and to show Kenneth Levin's knowledge of Maffia's background.<br>Preclude the portion defendants seek to add at p. 365, lines 4-14.  It is not needed for completeness, and is on a different topic. |
| GX09B-T | TR(U) _000617-18 | Allow portion proffered by the Government.  It is relevant to show how the conspiracy operates and to show interactions with customers.<br>Preclude defendants' addition from p. 616, line 1 to p. 617 line 11 as not necessary for completeness, as it relates to two different topics (Hobbs/how much customers will make).<br>Preclude defendants' addition at p. 618, lines 18-21 as not needed for completeness because it is on a different topic. |
| GX01A-T | TR(U)_000005 | Request for limiting instruction denied. |
| GX01B-T | TR(U)_000006-31 | Request for limiting instruction denied. |
| GX01D-T | TR(U)_000040 | Request for limiting instruction denied. |
| GX01G-T | TR(U)_000061-62; 63-64 | Request for limiting instruction denied. |
| GX01H-T | TR(U)_000063-64 | Request for limiting instruction denied. |
| GX03A-T | TR(U)_000212 | Request for limiting instruction denied. |
| GX04B-T | TR(U)_000218 | Request for limiting instruction denied. |
| GX04O-T | TR(U)_000281-83 | Preclude as irrelevant.  References drug use. |
| GX04R-T | TR(U)_000298-99 | Request for limiting instruction denied. |
| GX08C-T | TR(U)_000474-75 | Request for limiting instruction denied. |
| GX08E-T | TR(U)_000486-87 | Request for limiting instruction denied. |
| GX08F-T | TR(U)_000488-89 | Request for limiting instruction denied. |
| GX08G-T | TR(U)_000491-93 | Request for limiting instruction denied. |
| GX08H-T | TR(U)_000495-97 | Request for limiting instruction denied. |
| GX08O-T | TR(U)_000545-46 | Preclude statement by cooperating witness, not agreed to (p. 547, lines 3-5). |
| GX08P-T | TR(U) _000551-59 | Request for limiting instruction denied. |
| GX08S-T | TR(U) _000579-81 | Request for limiting instruction denied. |
| GX08U-T | TR(U) _000585 | Request for limiting instruction denied.  Defendants withdrew request. |
| GX08V-T | TR(U) _000586-87 | Request for limiting instruction denied. |
| GX08W-T | TR(U) _000589-96 | Request for limiting instruction denied. |
| GX08X-T | TR(U) _000598-600 | Request for limiting instruction denied. |
| GX10-T | TR(U) _000629-32 | Request for limiting instruction denied. |
| TBD/GX02-T | TR(U)_000084, 18-20 | Previously resolved.  See GX02B--T. |

| Group ID | Transcript Reference | Ruling |
|---|---|---|
| TBD/GX04-T | TR(U)_000365, 4-14 after "But you know ..." | Previously resolved.  See GX04ZD-T. |
| TBD/GX08-T | TR(U)_000477, 12-20 | Previously resolved.  See GX08D-T. |
| TBD/GX08-T | TR(U)_000484, line 16 starting with "I'm glad. . ." - 485, line 5 | Unclear what excerpt defendants intend to add this to. |
| TBD/GX11-T | TR(U)_000640, 2-21 | Previously resolved.  See GX11A-T. |
| TBD/GX11-T | TR(U)_000642, 5-22 - 643,1 | Previously resolved.  See GX11A-T. |
| TBD/GX11-T | TR(U)_000647, 21-22- 648, 1-6 | Previously resolved.  See GX11C-T. |
| TBD/GX11-T | TR(U)_000697, 2-14 | Unclear what excerpt defendants intend to add this to. |
| TBD/GX11-T | TR(U)_000724, 22-725, 1- 2 | Unclear what excerpt defendants intend to add this to. |
| TBD/GX11-T | TR(U)_000735, 9-21 | Unclear what excerpt defendants intend to add this to. |
| TBD/GX11-T | TR(U)_000766, 1-16 | Unclear what excerpt defendants intend to add this to. |
| TBD/GX12-T | TR(U)_000808, 1-18 | Previously resolved.  See GX11ZD-T. |