USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 25, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                               :

UNITED STATES OF AMERICA                    :
                                               :

              -v-                  :

                                               :           15 Cr. 101 (KBF)

KENNETH LEVIN,                    :
TAYLOR LEVIN,                   :           OPINION & ORDER
                                               :

                           Defendants.           :

------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      As set forth in several other rulings in this criminal matter, defendants are a father and son, Kenneth and Taylor Levin, and stand accused of mail and wire fraud as well as having engaged in a conspiracy involving a scheme to defraud. Kenneth Levin was the President of the company, United Marketing, through which the scheme allegedly operated.  According to the Government, defendant Kenneth Levin and those working with him designed and operated a multi-part scheme to defraud customers interested in purchasing "business opportunities" involving vending machines and associated routes or locations.

      In order to convict either defendant of any of the crimes with which he has been charged, the jury must find that the Government has proven beyond a reasonable doubt that he possessed the requisite specific intent to defraud.  "Intent to defraud" requires that the defendant have the specific intent to engage in a "deceit" that is "coupled with a contemplated harm to the victim."  United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999); see also United States v. Parse, 789 F.3d 83, 121 (2d Cir. 2015).  To obtain a conviction on the conspiracy charge, the

Government must prove beyond a reasonable doubt that the defendant "knew if its existence and knowingly joined and participated in it."  <u>United States v. Valle</u>, 807 F.3d 508, 516 (2d Cir. 2015).

The pending motion before this Court concerns whether defendant Kenneth Levin may seek to rebut the element of specific intent with evidence showing that he spent time out of the office to address medical issues, and as part of this, that the medical issues themselves caused him to be distracted both mentally and physically.  (As to the latter, he was allegedly in pain.)[1]

During her opening statement to the jury, Kenneth Levin's counsel, Juliane Balliro, affirmatively represented that Kenneth Levin's attention to his serious health problems would demonstrate that he was out of the office for extended periods of time and that he was distracted from his job.  It has become clear that while this defense had not been previously raised with the Court or the Government, it is a primary way in which the defendant seeks to defend himself. This makes it all the more remarkable to the Court that the myriad issues involved in such a defense had apparently either not been thought through prior to trial, or were certainly not appropriately developed and disclosed (e.g. the related documents) prior to trial.  Given the clear competency and skill of defense counsel, the Court is left to assume the manner of proceeding has been the result of a tactical choice.  Because of the lack of any disclosure or pre-trial discovery on this

---

[1] In discussions on this issue, defense counsel repeatedly framed the evidence at issue as directed at intent, not knowledge (though the two are of course intertwined in many respects).  The Court has reviewed the issue with respect to both elements in order to capture the particular knowledge requirements associated with the conspiracy charge.

issue, issues relating to this defense were not among the multitude of issues that the parties raised in limine.

Following the parties' openings, the Court immediately raised its concern that the way in which this medical evidence had been cast to the jury appeared to be geared towards eliciting sympathy, and, as cast, not for a proper purpose.[2]  The Government stated that it too had been surprised during the opening by this defense and was concerned as to whether it was being pursued for a proper purpose. The Court ordered a full proffer from the defendant as to what medical evidence he expected to use, how, and the purpose for which it would be offered.  As discussed below, the Court's request was repeated over a number of days; as the Court said at one point, its repeated requests made it sound like "a broken record."  The Court finally received the requested proffer orally at its insistence following multiple delays at the conclusion of the trial day on January 21, 2016 (two weeks into trial). Based on that proffer, the Court and the Government now have a better view as to defendant's intentions—though one cannot say that a "clear" view has emerged. Much remains left to the imagination.  The Court is frustrated by the lack of clarity on this issue and its sense, in light of the now extensive record on this topic, that tactics and not lack of time (there were many, many months pre-trial) or substance are the driving explanation.  Nevertheless, as this Court takes very seriously any proffered defense, it has carefully considered this issue.

---

[2] The Government had not objected to defense counsel's remarks during the opening.

Based on the information now before the Court, the Government has moved to preclude Kenneth Levin from introducing any evidence or offering any testimony related to his medical conditions as irrelevant or, even if relevant, subject to exclusion pursuant to Rule 403 or for failure to comply with discovery obligations. (ECF No. 225.)  For the reasons set forth below, the Court agrees.

The Court will not allow the defendant to proceed in the manner he has proffered, though the Court will allow Kenneth Levin to present certain evidence that he was out of the office on a number of occasions.  The reasons for such absences are irrelevant or, if relevant, such relevance is substantially outweighed by the danger of misleading the jury, confusing the issues or creating unfair prejudice; defendant's failure to provide medical records in advance of trial—or even in full to this point—is a further basis for the Court's ruling.  The Government is entitled to fairly meet the defense of "distraction", but is hindered from doing so because it lacks the basic records and information necessary to test it.  The Government need not accept that each proffered medical appointment related to a serious medical condition or invasive procedure.  No terminal or life-threatening diagnoses or issues have even been identified.  The only specific conditions as to which the Court has even "headline" information is a shoulder surgery and a cardiac stent.  Pre-trial procedures are designed to allow for fair trials.  Both parties are entitled to a fair trial.

I.      BACKGROUND

As with Kenneth Levin's intended advice of counsel defense, which the Court addressed in a separate decision issued on January 21, 2016 (ECF No. 222), the nature and scope of the evidence that Kenneth Levin seeks to introduce relating to his medical appointments and conditions has been a moving target and difficult to pin down.  There is no reason that preparation for this defense—which goes to a core element of the crimes charged—has had to wait until now.  A detailed explanation of the background as to how this issue arose—and how the defense has presented it over the course of the trial—is necessary to place the Court's decision in proper context.

As stated above, Kenneth Levin's health and medical conditions were first raised in Ms. Balliro's opening statement on January 12, 2016.  Specifically, Ms. Balliro stated during her opening that Kenneth Levin "has a number of health problems which over the years have required multiple surgeries", that he has "a couple of heart stents" and that his "health problems required over the years that he be out of the office on a number of occasions."  (Trial Tr. at 117.)  In this same portion of her opening, Ms. Balliro also highlighted Kenneth Levin's "inattention to detail."  (Trial Tr. at 117-18.)  These statements tied into the conclusion of her remarks, when Ms. Balliro added, "When the evidence is all in I'm going to get back up in front of you in closing argument and I'm going to ask you to give Mr. Levin what is left of his life back."  (Trial Tr. 132.)

Following the presentation of opening statements, and outside the presence of the jury, the Court raised defense counsel's reference to Kenneth Levin's medical conditions and the Court's concern that the manner of presentation appeared to be directed at, or certainly ran a serious risk of, trying to elicit juror sympathy.  (Trial Tr. at 138.)  The Court ordered that Ms. Balliro proffer how she intended to introduce this evidence; Ms. Balliro responded that she would seek to introduce it through the testimony of Kenneth Levin's wife and medical records from various medical providers as to dates, times, and the reasons for medical appointments.  (Trial Tr. at 138.)  The Court instructed the parties to confer on the issue and lay out their views as to the appropriate level of detail that the defense may offer.  (Trial Tr. at 138.)

The next day, January 13, 2016, having not received anything in writing on this issue, the Court again inquired of Ms. Balliro as to her intentions.  Ms. Balliro stated that she wanted to use medical records (including some of the content of the records) to lay a foundation for dates and times when Kenneth Levin was out of the office for various medical appointments.  (Trial Tr. at 285.)  In particular, she wanted to introduce the name and specialty area of a medical provider and a certain amount of information regarding the nature and purpose of the appointment.  (Trial Tr. at 285.)  When pressed as to the relevance of the reasons for Kenneth Levin's medical appointments, Ms. Balliro responded that she didn't want the jury to think that Kenneth Levin is a hypochondriac, but wanted to explain that he was in fact out of the office on numerous occasions.  (Trial Tr. at 285.)  The Court repeated its

serious concern that this manner of proceeding ran the risk of seeking to elicit juror sympathy and jury nullification.  The Court stated that its view in this regard was informed in part by defense counsel's opening statement in which she linked his health conditions to an eventual request by Ms. Balliro at the end of the case to leave him the "life he has left."  (Trial Tr. at 286.)  In response, Ms. Balliro added (for the first time) that another purpose for the evidence would be to show that these health issues contributed to Kenneth Levin's inattention to detail.  (Trial Tr. at 287.)  Ms. Balliro stated that while the evidence would not be offered for the purpose of showing that Kenneth Levin "was physically or emotionally incapable as a medical matter from giving appropriate attention to his business," it would be offered to show that "on a personal emotional level he was distracted by . . . everything that was going on in his personal life."  (Trial Tr. at 288.)  Thus, counsel now sought to offer evidence of Kenneth Levin's medical conditions and medical appointments for two primary reasons: first, to show that he was simply not in the office on various occasions, and second, to show that his mental state was impacted by these same appointments such that he did not in fact possess the requisite intent for the crimes charged.  Again, why any and all of this had not been pursued and prepared pre-trial has never been adequately explained.

The Court again ordered defense counsel to provide a detailed proffer that would enable the Government and the Court to understand how she proposed to proceed, and to allow the Government to assess any issues they might have.  (Trial

Tr. at 287.)  The Court requested that the parties provide letter submissions to lay

out their positions on the issue.  (Trial Tr. at 289.)

The following morning, January 14, 2016, the Government provided the

Court with an email they had received from Ms. Balliro dated January 14, 2016,

stating her position as to the admissibility of matters relating to Kenneth Levin's

health.  (ECF No. 206.)[3]  The reasons set forth in that email tracked those Ms.

Balliro had stated on the record on January 13: the contents of Kenneth Levin's

medical records would be used to inquire as to his medical conditions only to the

extent necessary to show that "his conditions caused him to feel unwell for extended

periods of time and that his condition was a distraction that contributed to his

inattention;" she also stated that she would only seek to admit records of medical

appointments to show that Kenneth Levin's treatment caused him to be absent

from the office at certain times.  (ECF No. 206.)

Also on the morning of January 14, the Government submitted a letter to the

Court confirming that it had been given no pre-trial notice of Kenneth Levin's

purported medical defenses and that the Government had learned of that defense

for the first time during defense counsel's opening statement; the Government also

stated that as of January 14, it had not yet received any medical records from Ms.

Balliro, nor had the Government received notice of any witness through whom

defense counsel intended to admit this evidence.  (ECF No. 208.)  The Government

had previously indicated that it had duly made a Rule 16 request for reciprocal

---

[3] The email indicated that it was a response to a letter from the Government dated January 12, 2016, which was not provided to the Court and has not been filed on the docket.

discovery.  The Government also argued that Kenneth Levin had presented no legal basis for the admission of such evidence and that the evidence was clearly designed to garner sympathy.[4]

The Court again addressed this issue before testimony started on the morning of January 14.  The Court informed defense counsel that it had requested a proffer and that her very general email responding to the Government "didn't begin to approach the kind of proffer that I thought I was clear and laid out yesterday that I would need in order to understand . . . what the evidence is precisely that you are seeking to put in because of the very significant chance of trying to push the jury into an area they should not go."  (Trial Tr. 602.)  The Court added that until the defense explained "exactly what you are doing and/or intend to do or would do and the specific relevance to the . . . claims in the charges," the Court "would not allow a single question of any witness on any substance of a medical issue or the fact of even a medical issue."  (Trial Tr. at 602.)[5]  The Court stated that the defense would have to provide a more complete proffer as to "what you are offering the evidence for and precisely what the evidence is;" Ms. Balliro agreed to do so.  (Trial Tr. at 604-05.)  The Court made clear that whatever medical condition the defense intended to mention by name or the area of practice of a physician, the Court would have to know the basis for the admission of that evidence.  (Trial Tr. at 607.)

---

[4] The Government's letter also responded to Ms. Balliro's letter dated January 13, 2016 (ECF No. 207) that addressed the admissibility of matters relating to defendant Taylor Levin's drug addiction and related issues.  The Court separately addressed that issue in a decision issued on January 19, 2016.  (ECF No. 214.)

[5] The defense has never indicated that it would have sought to question any witness who has testified thus far on Kenneth Levin's medical condition(s).

The Court does not hold trial on Fridays and thus at the end of the day on January 14, there were several days—including an intervening holiday weekend—before trial resumed.  This period should have afforded defense counsel time to carefully address each of the issues raised by the Court.  However, when trial resumed on Tuesday, January 19, 2016, the issue had advanced not a step further.  Having received nothing in writing over the weekend, the Court inquired as to whether the defense had any further update on its intended use of Kenneth Levin's medical conditions.  (Trial Tr. at 1079.)  Ms. Balliro indicated that the defense was still in the process of obtaining Kenneth Levin's medical records from a number of medical providers by subpoena, and that she would provide the records to the Government as soon as she received them.  (Trial Tr. 1079-80, 1083.)  No explanation was given as to why the subpoenas could not have been issued earlier or as to why this issue could not have been surfaced pre-trial.

The Court reminded Ms. Balliro that, irrespective of the records, she was required to provide a proffer; and that the Court had now repeatedly sought such a proffer to understand how she planned to use the medical evidence.  The Court specifically and perhaps, given the history which was self-evident, unnecessarily stated the obvious—that "time is running out" and that the Court sounded like a "broken record" in continually having to ask for the same proffers.  (Trial Tr. at 1080.)  The Government noted that it also had serious concerns about prejudice to its case as a result of the defense's delay, stating that the Court's ruling with respect to the scope of evidence that would be allowed would affect the

Government's presentation of its case.  (Trial Tr. at 1083-84.)  The Court stated that while it had been trying to provide the defense with an opportunity to be fully heard on its defense, the defense's own delays in providing clarity on the defense and producing relevant records raised fairness issues.  To focus the defense, the Court suggested that, in particular, the defense address whether its anticipated use fell within the scope of Fed. R. Crim. P. 12.2.  (Trial Tr. at 1081-82.)

That night, the Court again did not receive a written proffer addressing any of its concerns from the defense.  Before testimony commenced the following morning, January 20, 2016, the Government again raised the issue of the lack of clarity regarding the nature and scope of Kenneth Levin's intended introduction of evidence relating to his medical appointments and conditions.  The Government noted that the defense had recently informed the Government that it was seeking medical records from 23 separate medical providers; the delays and expected volume raised further concerns.  (Trial Tr. at 1099-1100.)  The Court directed Ms. Balliro to provide an oral proffer at the end of the day as to the parameters of this defense, asking her to be "as specific as possible."  (Trial Tr. at 1100-04.)  The Court stated that the defense could further submit any case law or other authority in support of the admission of such evidence by the following morning.  (Trial Tr. at 1104-05.)

After the conclusion of testimony on January 20, Ms. Balliro provided an oral proffer.  She stated that she would seek to introduce two forms of evidence relating to Kenneth Levin's medical conditions.  (Trial Tr. at 1257-59.)  First, Ms. Balliro

stated that the defense would seek to introduce "records containing the names of the provider, the type of provider . . . the date of the service, [and] the type of the service" for services rendered by up to 23 providers between January 2005 and December 2011. (Trial Tr. at 1257-58.) Ms. Balliro stated that these records would be offered to show the dates on which Kenneth Levin was absent from the office to attend appointments, and to show that he was distracted by his various health problems and was therefore less attentive to the details of his business. (Trial Tr. 1258.)[6] Second, Ms. Balliro stated that, if Kenneth Levin testifies, she would also seek to elicit testimony as to the reasons for various doctor's visits and to show that Kenneth Levin suffered from pain that diverted his attention from his business. (Trial Tr. at 1258-59.) Ms. Balliro added that she intended to present testimony from Kenneth Levin's wife as to her observations regarding the extent to which Kenneth Levin's health problems impacted him. (Trial Tr. at 1260.) Ms. Balliro then further clarified that she was not "offering a defense based upon mental disease or defect" or that Kenneth Levin "didn't have the intellect to form an intent" to commit the crimes charged. (Trial Tr. at 1260.) Following Ms. Balliro's proffer, the Government expressed continued concerns as to the admissibility of the proffered evidence and whether it might mislead or confuse the jury. (Trial Tr. at 1263-64.)

On the morning of January 21, 2016, Ms. Balliro submitted a short letter by email providing her authority—consisting of three case citations—in support of the

---

[6] In this regard, Ms. Balliro also stated that Kenneth Levin has a "hearing difficulty," but had not visited any physicians in connection with that issue. (Trial Tr. at 1258.)

admissibility of the evidence that the defense sought to introduce.  (ECF No. 221.)
The defense's citations included: Old Chief v. United States, 519 U.S. 172 (1997), for
the proposition that the Court may consider evidentiary alternatives to mitigate
any prejudicial impact as part of its Rule 403 analysis, and United States v.
Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991), and United States v. Crown, No. 99
CR. 1044(AGS), 2000 WL 709003 (S.D.N.Y. May 31, 2000), for the proposition that
those cases are inapposite to the facts presented here.  In Paccione, the Second
Circuit held that character evidence relating to the fact that the defendant's son
had cerebral palsy was properly excluded under Rule 403; in Crown, the district
court excluded evidence offered to show that the defendant reentered the United
States illegally to get treatment for AIDS in support of a necessity defense.

Before the start of testimony on January 21, Ms. Balliro explained that the
aim of her submission was "to find a few cases in this circuit or district where
medical evidence was disallowed and where that was upheld and just tried to
distinguish this [case] from those circumstances."  (Trial Tr. at 1292.)  The
Government stated that it would respond to the defense's oral proffer and email
submission by the end of the following day, January 22, 2016.  (Trial Tr. at 1291.)

On January 22, 2016, the Government provided its response.  (ECF No. 225.)
The Government argued that while some evidence as to date, time and duration of
appointment may be properly admitted, the scope of defendant's intended use raised
relevance, Rule 403 and fairness issues.  The Government stated that it would be
prepared to stipulate (only if given appropriate information to allow it to verify the

accuracy of the proposed dates and times, which it did not yet have) to the date, time and duration of appointments.  The Government also stated that it would be willing to consider a stipulation as to verifiable conditions and/or procedures to the extent they relate to pain and/or distraction.  However, the Government stated that the nature of the medical provider and nature of the appointment was unnecessary, irrelevant, and ran into a serious danger of misleading the jury, confusing the issues and seeking to elicit sympathy.  The Government had also not received the documents on which counsel intended to rely, and would be unfairly prejudiced by the production of voluminous records just days before the Government intended to rest its case and the defense intended to introduce the evidence.  The Government also raised concerns that aspects of the use—including references to the nature of the appointment—were not self-evident to a jury and could therefore be misleading and confusing.

II.    LEGAL STANDARDS

    A.    <u>Relevant Evidence</u>

Rule 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action."  Fed. R. Evid. 401; <u>see also</u> <u>Old Chief v. United States</u>, 519 U.S. 172, 178 (1997).  "The fact to which the evidence is directed need not be in dispute."  <u>Old Chief</u>, 519 U.S. at 179 (quoting Fed. R. Evid. 401 advisory committee's note) (internal quotation mark omitted).

To be relevant, evidence need not constitute conclusive proof of a fact in issue, but only have "any tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the evidence." McKoy v. North Carolina, 494 U.S. 433, 440 (1990) (quoting New Jersey v. T.L.O., 469 U.S. 325, 345 (1985)) (internal quotation marks omitted); see also United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010).

B.    Rule 403

Rule 403 authorizes the exclusion of relevant evidence when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see also Old Chief, 519 U.S. at 180. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Old Chief, 519 U.S. at 184. "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." Id. at 182-83. In making this assessment, a court should take into consideration the "offering party's need for evidentiary richness and narrative integrity in presenting a case." Id. at 183.

Rule 403 is concerned with "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)) (internal quotation marks omitted). Evidence that has a high likelihood of inappropriately eliciting sympathy from the jury on a matter having no

bearing on the merits is properly excludable under Rule 404.  E.g., United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (concluding that trial court properly exercised its discretion by "exclud[ing] testimony that had no bearing on [the defendant's] honesty or integrity and that could well cause the jury to be influenced by sympathies having no bearing on the merits of the case"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007); United States v. Watts, 934 F. Supp. 2d 451, 481 (E.D.N.Y. 2013).

      C.     Rule 16

Rule 16(b) of the Federal Rules of Criminal Procedure requires the defendant, upon request (which here was appropriately made pre-trial), to disclose documents or data it intends to use in his case-in-chief at trial.  Fed. R. Crim. P. 16(b).  There is also a continuing duty on both parties before or during trial to promptly disclose additional evidence or material.  Fed. R. Crim. P. 16(c).  A failure to comply with disclosure obligations can result in preclusion or another order that is just under the circumstances.  Fed. R. Crim. P. 16(d)(2).  Courts in this Circuit have upheld preclusion on an appropriately developed record for Rule 16(b) failures.  E.g., United States v. Weiss, 930 F.2d 185, 199 (2d Cir. 1991); United States v. Ryan, 448 F. Supp. 810, 810 (S.D.N.Y. 1978); United States v. Mahaffy, No. 05-CR-613(S-3)(ILG), 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007); see also United States v. Rajaratnam, No. S2 09 Cr. 1184(RJH), 2011 WL 723530, at *6 (S.D.N.Y. Feb. 25, 2011).

D.     <u>Medical Evidence to Rebut the Existence of Specific Intent</u>

Kenneth Levin seeks to introduce evidence of his medical appointments (including the type of provider, purpose of the appointment, date and duration), as well as his personal experience of such medical condition (i.e. pain, worry, and distraction), to rebut the Government's evidence as to whether he had or possessed the requisite intent or acquired or possessed the requisite knowledge to commit the crimes charged.  It is clear that both intent to defraud and knowledge are required elements of the crimes.  <u>United States v. Hassan</u>, 578 F.3d 108, 123 (2d Cir. 2008) (conspiracy); <u>United States v. Rybicki</u>, 354 F.3d 124, 151 (2d Cir. 2003) (mail fraud and wire fraud).  It is also clear that evidence that would rebut those elements is relevant under Rule 401.  In this regard, a defendant may seek to introduce evidence tending to show, circumstantially or directly, that he lacked the requisite intent or knowledge.  <u>E.g.</u>, <u>United States v. Erskine</u>, 588 F.2d 721, 722 (9th Cir. 1978) ("The rule that a defendant may rebut or seek to disprove the Government's case by showing that one or more elements of a criminal offense did not occur extends to any of the mental components necessary to establish guilt of the crime in question.") (Kennedy, J.).

Kenneth Levin argues that due to the number and nature of his medical appointments, and the pain and other physical manifestations of his conditions, he did not in fact have the intent to defraud or lacked the requisite knowledge; he asserts that he is not seeking to claim that he lacked mental capacity or ability to form intent or to acquire knowledge.  Defense counsel recognizes that the distinction—to the extent there is one—is critical.  The history of using medical

17

evidence to defend against specific intent crimes has a long history.  The defenses of justification or excuse are not appropriate to counter the element of specific intent here.[7]  Rule 12.2 of the Federal Rules of Criminal Procedure was developed to address the complicated issues which can arise with regard to mental capacity— that is, whether a defendant could have formed the requisite intent.  A proven lack of capacity may constitute a total defense to the required intent element.  Lack of capacity must not, however, be confused with some sort of other mental justification or excuse.  Capacity is a different issue from the question of whether, having the capacity to form intent, the defendant did not do so; a reason why he did not in fact do so could be related to his preoccupation with a certain health condition.

The law has dealt with capacity to form a required mens rea in Rule 12.2 of the Federal Rules of Criminal Procedure.  That rule came into existence as part of the Insanity Defense Reform Act of 1984 ("IDRA").[8]  Pursuant to Rule 12.2, a

---

[7] A defense of "justification" allows a defendant to avoid liability, in certain circumstances, where the defendant believed that her conduct was necessary to avoid harm to herself or to another.  See Model Penal Code § 3.02.  A justification defense typically requires the defendant to satisfy four elements: "(1) the defendant was under an unlawful and present threat of death or serious bodily injury; (2) the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) the defendant had no reasonable legal alternative to violating the law; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm."  United States v. Hodge, 103 F. App'x 686, 687 (2d Cir. 2004) (summary order) (citing United States v. Deleveaux, 205 F.3d 1292, 1297 (11th Cir. 2000)); see also United States v. White, 552 F.3d 240, 247 (2d Cir. 2009).  An "excuse" defense, such as duress, allows the defendant to avoid liability because coercive conditions negate a conclusion of guilt even though the necessary mens rea is present.  Dixon v. United States, 548 U.S. 1, 7 (2006).  Given the limited nature of justification and excuse defenses, such defenses are rarely permitted to combat a mail or wire fraud charge.  See United States v. Dupre, 462 F.3d 131, 138 (2d Cir. 2006); Durante v. United States, 425 F. Supp. 2d 537, 540 (S.D.N.Y.2006).

[8] Rule 12.2(b) provides: If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt . . ., the defendant must–within the time provided for filing a pretrial motion or at any later time the court sets–notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.  The court may, for good cause, allow the defendant to file the notice late, grant

criminal defendant who seeks to prove he was <u>legally</u> incapable (e.g. lacked the capacity) of forming the intent required to commit the crime must provide pre-trial notice of this defense and prove by clear and convincing evidence at trial the following: (1) that he had a severe mental disease or defect at the time of the offense, and (2) that as a result he had been unable to appreciate the nature and quality or the wrongfulness of his acts.  18 U.S.C. § 17; <u>United States v. Garcia</u>, 94 F.3d 57, 61 n.2 (2d Cir. 1996); <u>United States v. Bumagin</u>, No. 11-cr-800 (WFK), 2015 WL 5725870, *6 (E.D.N.Y. Sept. 29, 2015).  This defense is known colloquially as the "insanity defense", though it is, not by its terms, limited to instances of what we think of as insanity.  Other organic medical conditions could potentially result in a similar inability to form intent.  Rule 12.2 requires pre-trial notice of the defense; moreover, proof of a severe mental disease or defect requires expert evidence. <u>United States v. Cervone</u>, 907 F.2d 332, 346 (2d Cir. 1990).  Defendant Kenneth Levin did not provide pre-trial notice and does not seek to use expert testimony here.

Putting Rule 12.2 to the side, the Court examines other ways in which evidence of medical condition may be used to rebut whether the defendant in fact had the requisite intent, or in fact had the requisite knowledge.  The line is a thin one—capacity to form intent and whether intent has in fact been formed—are closely related, but also different.  There are all sorts of instances in which defendants that are capable of having specific intent do not have it; and there may

---

the parties additional trial-preparation time, or make other appropriate orders.  Fed. R. Crim. P. 12.2.

be all sorts of reasons for that.  Acting in good faith is an obvious one.  More difficult is when a medical condition is alleged to occupy the mental space that would or could otherwise be used to form intent or acquire knowledge and is proffered as the reason for a lack of intent or knowledge in fact; the line between "capacity" and "actually" (or "could" and "did") moves close to the line separating the two.  The former is suggestive of a medical basis for the lack of intent ("he just couldn't form the intent, he was not capable"), while the latter is a medical basis for having failed to form intent ("he just didn't form the intent because he was occupied with his serious medical conditions, and was distracted and in pain").  To the extent these blend, Rule 12.2 must govern.  To the extent these are separable, the Court turns to the Federal Rules of Evidence that govern whether evidence is probative under Rule 401, and to Rule 403 for the question of whether even if probative, it is nonetheless excludable.  The Court also turns to Rule 16 of the Federal Rules of Criminal Procedure to address failures to meet reciprocal discovery obligations.

Under Rule 401 the basic question is whether the proffered evidence (as described above) is probative of the issue of whether defendant in fact had the intent or in fact had the knowledge; if it is not probative of that question, the inquiry ends.  E.g., United States v. Dupre, 462 F.3d 131, 137 (2d Cir. 2006); United States v. Schneider, 111 F.3d 197, 201 (1st Cir. 1997).  In cases in which medical evidence has been proffered in support of such a showing, courts have cautioned, however, that "such evidence is permitted only in rare and narrowly defined circumstances because of the high likelihood that it will result in the resurrection of

precisely the kinds of defenses the IDRA was enacted to prohibit." United States v. Sabir, No. S4 05 CR. 673 (LAP), 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007); Bumagin, 2015 WL 5725870, *6. As a result, "in determining whether evidence of a mental impairment is admissible [to negate intent], a defendant is required to demonstrate clearly, in advance of trial, that there is a direct link between such evidence and the specific mens rea that the Government must prove." Sabir, 2007 WL 1373184, at *5 (citing United States v. Dupre, 339 F. Supp. 2d 534, 539 (S.D.N.Y. 2004)).

Among other concerns raised by a defendant's attempt to introduce such evidence, courts carefully scrutinize "whether the defendant clearly demonstrates how such evidence would negate intent rather than merely present a dangerously confusing theory of defense more akin to justification and excuse." United States v. Brown, 326 F.3d 1143, 1147 (10th Cir. 2003); see also United States v. Cameron, 907 F.2d 1051, 1067 (11th Cir. 1990) (stating that "district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of mens rea" (quotation marks and citations omitted)). Conclusory statements as to the link between psychiatric evidence and the defendant's mens rea do not render the evidence admissible. Sabir, 2007 WL 1373184, at *6. The Court must also scrutinize, as in all circumstances, whether such mental health evidence must be excluded on Rule 403 grounds. United States v. Ahrendt, 560 F.3d 69, 76 (1st Cir. 2009); see United States v. Mason, 294 F. App'x 193, 200 (6th Cir. 2008) (affirming exclusion of

psychiatric medical records on Rule 403 grounds because potential that the evidence could confuse and mislead the jury outweighed the records' probative value).

Far less common, but more directly implicated by the defense's proffer here, are circumstances in which defendants offer medical evidence relating to physical health to negate specific intent.  In United States v. Johnson, a defendant sought to introduce medical records of her spouse to show that she was distracted by such medical condition during the period in which defendant was alleged to have engaged in mail fraud.  See 583 F. App'x 503, 507-08 (6th Cir. 2014).  The district court excluded the records based primarily on Rule 403.  The Sixth Circuit found that the district court did not err, or at most committed harmless error, in such exclusion.  Id.  In United States v. Wallace, a defendant was allowed to present evidence through testimony by his mother that the defendant suffered from severe pain arising out of a surgical procedure at the time of the alleged transaction; however, the district court precluded additional medical records proffered to corroborate this testimony.  See 972 F.2d 344 (4th Cir. 1992) (table).  Defendant was convicted and appealed, inter alia, on the basis that such exclusion was error.  The Fourth Circuit disagreed.  It held that the district court properly excluded medical records on Rule 403 grounds.  Id.  Finally, in United States v. Tipton, the Eleventh Circuit affirmed the denial of the defendant's motion for a new trial where the defendant claimed that his physical discomfort due to a boil on his body—evidence that the district court had not excluded—rebutted his knowing participation in the charged conspiracy.  572 F. App'x 743, 747 (11th Cir. 2014).

There are, of course, a vast number of cases in which courts have precluded or carefully circumscribed evidence that, even if probative of some issue in dispute, may seek to elicit sympathy.  E.g., Paccione, 949 F.2d at 1201 (defendant's son had been born with cerebral palsy); United States v. Lloyd, 807 F.3d 1128, 1162-63 (9th Cir. 2015) (birth of defendant's daughter); United States v. Schneider, 801 F.3d 186, 197-99 (3d Cir. 2015) (fact of defendant's pre-trial incarceration that prevented access to medical treatment); Harris, 491 F.3d at 447 (defendant a "dedicated family man"); Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 940 (10th Cir. 1994) (epileptic seizures); Watts, 934 F. Supp. 2d at 481 (one defendant's autistic children and other defendant's daughter with leg amputation); United States v. Agnello, 158 F. Supp. 2d 285, 289-90 (E.D.N.Y. 2001) (defendant's bipolar disorder).

## III.   DISCUSSION

To identify the issues implicated by defendant Kenneth Levin's proffered use of evidence of medical appointments and conditions, the Court must evaluate how precisely the particular evidence is probative of intent (or lack thereof) or knowledge (or lack thereof).  There is probative value to certain aspects of the evidence.

First, evidence of the dates and times that Kenneth Levin was out of the office is probative of whether he knew what was happening at the office.  While absence from the office is by no means dispositive of the issue, it is relevant to that question.  For instance, if a consistent script was used while the defendant was in the office as well as when he was out of the office, the evidence may be beside the point, or weak at best.  But, if there is evidence that practices were one thing when the defendant was present and changed when he was not, the defense may have

23

more traction.  Similarly, if the evidence shows that Kenneth Levin was in
communication with the office even when he was not physically present, that may
undercut its strength.  But, as with all questions of weight, these are questions for
the jury.  As these examples make clear, the evidence of presence or absence from
the office may be probative of knowledge.  As to <u>intent</u>, this evidence may be
circumstantially probative to the extent that defendant's absence from the office
supports an inference that he was not present when conduct relating to the scheme
to defraud occurred, and may therefore not have known or been part of it.  That is,
that Kenneth Levin did not have the intent to defraud because the fraud, including
the false statements and the intent to cause customers to part with their money,
happened when he was away from the office and without his participation.  To the
extent that the same conduct occurred when the defendant was present at versus
out of the office, this evidence may again be considered weak; and that again is a
question for the jury.

    The second question for the Court is whether for these purposes (e.g. to show
that he was out of the office) the <u>nature</u> of the appointment—whether it was for a
haircut, an MRI of the brain or the insertion of a heart stent (two types of
appointments that are among those sought to be introduced by the defendant)—is
probative of intent or knowledge.  That is, is it necessary for the jury to know that
Kenneth Levin was seeing a specific type of medical specialist (such as a neurologist
or cardiologist) versus that he was out of the office at an appointment, period, full
stop.  Putting aside the "distraction" defense, which the Court addresses below, it is

not.  Defense counsel has argued that she wants to introduce the type of doctor and nature of the appointment to prevent the misleading impression that Kenneth Levin was some sort of hypochondriac.  This is misguided.  It first presupposes that the jury needs to understand anything about Kenneth Levin's absence from the office other than the fact of that absence, and therefore that there is some independent relevance to the fact that the appointments were medical-related (versus haircuts, shopping, travel, etc.).  The nature of a doctor's specialty and purpose of the appointment are unnecessary to provide background or context for the absence.  Defendant has proffered no basis to assume that access to one's telephone was made more limited in a doctor's office than while on an airplane or under scissors at the barber.   In all events, to the extent such evidence is probative of the fact of absence at all, it runs directly into Rule 403 issues.  As described by defense counsel at her oral proffer, she would want to walk through all of what appear to be Kenneth Levin's many medical appointments, describing the type of doctor and reason for the appointment (MRI of the brain, stent, etc.).  The Court's view of how defendant intends to use this evidence is also informed by Ms. Balliro's opening statement in which her description of Kenneth Levin's health issues and closing remark that she would be asking the jury to leave him what life he has left, strayed close to or even into the area of seeking to elicit sympathy, and to invite jury nullification based on improper considerations.  In this regard, the very issue for which Ms. Balliro seeks to use this information (to show that Kenneth Levin is not a hypochondriac when he was absent from the office so much) is precisely the

problem: Ms. Balliro seeks to have the jury accept as self-evident the seriousness of the medical conditions (that is, not hypochondriacal) and perceive that each and every appointment was directed at a serious condition.  It is entirely unproven and unclear that this is so.  This use has a far greater potential to mislead, confuse and cause prejudice than its limited probative value with respect to use of showing absence can support.  Accordingly, evidence of the nature of the appointments used to support Kenneth Levin's absence in fact from the office is precluded as irrelevant and in all events substantially outweighed by the danger of confusion, misleading the jury and prejudice.

It is of further importance to the Court that this evidence comes so late. Defense counsel has, only during the course of this trial, started to produce the very medical records she now seeks to introduce.  The Government's letter to the Court of January 24 states that to date, records of only 4 providers have been received. (ECF No. 225.)  There is no reason why subpoenas could not have been served long ago such that the Government could have had a fair opportunity to rebut evidence suggestive of real medical conditions by introducing its own evidence.  For instance, part of the pre-trial motion practice concerned a personal injury lawsuit that Kenneth Levin brought against a Mercedes-Benz dealership.  According to Kenneth Levin, he was injured while in the dealership and has had to attend to medical issues causally related to that incident.  The Government moved successfully in limine to introduce a false statement made by Kenneth Levin during a deposition in that lawsuit.  (ECF No. 157.)  Had the Government had appropriate notice of the

records that Kenneth Levin now seeks to introduce, the Government could have sought to have shown that the number and type of medical providers: (1) were part of a misleading picture of the defendant's health designed to support his claims in that lawsuit, and (2) that the fact of the appointments is not demonstrative that the conditions are real.

Finally, Kenneth Levin combines all of the evidence regarding his medical conditions—the number of appointments, when, where, with whom, for what—with a proffer that he would add in through his wife's or his own testimony, how he felt physically and emotionally during this time, as circumstantial evidence that he in fact lacked the intent to defraud because he was so distracted and preoccupied.  In this regard, Kenneth Levin wants to argue, in effect, "I was seeing a doctor for this condition, and I was worried, preoccupied by that condition" or, as part of that, "and I was in pain because of that condition;" he would presumably add, "I was thinking of something else—these medical issues—during that time" or "I was primarily focused on these health issues to the exclusion of my business."  (It bears noting that the chronology and seriousness of the medical issues is important to how substantial a defense this could be.  For instance, proof that the defendant engaged in criminal conduct in 2005 through 2009, but began experiencing serious health issues in 2010, does not negate intent for the earlier period.  Because the medical records have not been provided, this issue cannot be squarely addressed.)

Evidence that Kenneth Levin was distracted by a medical condition can be thought of as evidence that his attention was not focused on what was happening at

the office and that his attention and focus were elsewhere.  Therefore, arguably, Kenneth Levin did not have an intent to defraud because he was indifferent to what was happening with customers, or that he was simply thinking about other things when people in his office exposed him to certain information.  The argument is akin to the medical conditions as a sort of Teflon—the condition(s) were sufficiently encompassing of his mind and attention that what was happening around him did not sink in to his consciousness, that he therefore did not have an intent to defraud, or that, even though he may have been physically present from time to time, he did not knowingly join with the other individuals at United Marketing or with the locators in a conspiracy.  The Court puts to the side for the moment the contrary evidence and the strength of that evidence—e.g., that the defendant was heard on tape, that there is testimony by cooperating witnesses that Kenneth Levin himself instructed them to make certain statements or was present to and responded to them regarding certain statements, that he listened in on phone calls and marketing pitches, that he and his son controlled the emails that went into or out of the business, etc.—that will be for the jury to weigh.

There is a fine line between arguing that a medical condition was so distracting that it acted as a barrier to information sinking into one's consciousness, and arguing that one lacks a capacity to form the requisite intent to commit the crimes charged.  As discussed, to the extent that this is an argument about capacity, such evidence would be precluded as failing to meet the requirements of Rule 12.2. Kenneth Levin contends that the argument is about whether he in fact internalized

information because of distraction, and that he intends to offer this through the testimony of himself and his wife, and not through an expert, thereby removing it from the purview of Rule 12.2.  Given the record before this Court on this issue, including how late it has been raised, this raises concerns.  Rule 12.2 is designed to place requirements around evidence that is legally capable of rebutting mental capacity to form the requisite <u>mens rea</u>.  The rule is designed to insure that when a jury hears such evidence, it is reliable—thus the requirement of expert testimony. There is no provision that allows a defendant to have a jury instructed on such a defense—lack of ability to form the <u>mens rea</u>—based solely on self-serving testimony from a layperson or his spouse that while not "legally" incapable of having the intent, he was "effectively" incapable of having it and thus did not in fact have it.  To the extent there is a difference between the two, it is a thin one.  In all events, even if probative and not afoul of Rule 12.2, the defense as cast runs directly into a Rule 403 problem of likely seriously confusing or misleading the jury, and prejudicing the Government.

It is important to the Court's consideration of this issue that, as discussed above, given the late disclosure of this defense and the even later (and still incomplete) disclosure of medical records, that the Government has had insufficient time to develop its own evidence to meet it.  For instance, it is not a foregone and self-evident conclusion that having certain medical appointments for a man of a certain age is other than routine.  A routine appointment is less likely to be distracting.  It is also not self-evident that medical appointments directly related to

29

the alleged injury Kenneth Levin suffered at the Mercedes-Benz dealership, and which are central to defendant's personal injury lawsuit regarding the same, are not vulnerable as based on a litigation-related medical appointment.  The Court has no view on any of this—for all the Court knows, each and every one of the appointments relates to a serious condition.  But the Court must leave open the possibility that they do not.  It is not, therefore, up to defendant to disclose what he believes are medical documents and a medical defense important to his case without having given the Government a fair opportunity to meet the defense.

An overarching point is that which the Court has discussed above, which is that the use is in fact intended to elicit sympathy and use jury nullification as a defense.  Such a use is plainly improper.  Again, the Court takes such a use seriously because of Ms. Balliro's final remarks in her opening statement.

In sum, the "distraction" defense encounters serious Rule 403 issues worsened by its late disclosure and defendant's failure to comply with Rule 16 obligations.  Such late disclosure has created a unique record on this issue in this matter.  The Court's rulings are based on this particular record and might well be different on a different record.

With all of this said, the parties shall proceed as follows:

i.   Kenneth Levin may himself testify to the dates and times of appointments for the purpose of showing absence from the office; his wife may do the same;[9] the parties may, if they choose to, stipulate to the same.

ii.   No witness (including both Kenneth Levin and his wife) shall testify that any particular appointment that kept him out of the office was for a specific purpose or even that it was medically related.

This determination is based on the totality of the Court's discussion above and in particular the Court's Rule 403 analysis and the danger, based on the history of this issue in this case, that such use would confuse or mislead the jury.  The Court has considered whether a cautionary or limiting instruction could address these issues but believes it would not (under the particular circumstances here presented).  The Court's ruling is also based on the defense's failure to comply with its reciprocal Rule 16 obligations and the resulting late production of documents; accordingly, the Court has serious concerns that the Government is unable to fairly meet such evidence by showing that certain appointments were routine or were related to pursuit of a personal injury lawsuit as to which medical evidence may have been developed for a specific purpose.

iii.   Except as set forth below, neither Kenneth Levin nor his wife is permitted to testify that he was "distracted" by these appointments.  The Court has discussed above, and further below, the "distraction" defense.  Preclusion of use of the facts of these myriad appointments or fact of the various medical tests or conditions to argue distraction is based on the totality of the Court's discussion above and in particular the Court's Rule 403 analysis; it is also based in particular on this record on the late and incomplete production of documents that results in an inability of the Government to fairly meet the evidence.  In short, had production been made before trial consistent with the defendant's reciprocal Rule 16 obligations, the Government would have had the opportunity to subpoena medical providers or retain its own records to show that certain appointments were unnecessary, routine, related to a non-serious medical condition, etc., all of which could rebut defendant's proffered use.

---

[9] The medical records may be of assistance to prepare either Kenneth Levin or his wife as to when certain appointments in fact occurred.

iv.     The Court will not allow the introduction of medical records at all.  This limitation is based on Rule 403 and the defendant's failure to comply with his reciprocal Rule 16 discovery obligations after the Government had made an appropriate request, the prejudice that therefore has resulted from such belated production, and due to the nature of the confusing and not self-evident nature of the records and the potential to mislead or confuse the jury.

v.      If Kenneth Levin chooses to take the stand, he may testify as to the distraction he personally experienced as a result of the only two serious medical issues he has specifically identified to the Court: a shoulder surgery and the insertion of a cardiac stent. He may testify as to the impact these conditions may have had on his awareness of what was going on in the office.  The limit to the two known conditions is based on the particular record here, that despite numerous opportunities to make a full proffer, the Court has what it would describe as a confused and "mushy" record as to what type of conditions defendant has, and how they would or could have in fact distracted him.  The only two which defendant has mentioned are the shoulder surgery and the stent (appointments such as for a brain "MRI" are not in and of themselves "conditions").

The Court's ruling in this regard is specifically tailored to the particular history of this case—the delays in production of records and the lack of clarity as to how this defense would really be used.  Thus, because of those concerns, the Court is trying to balance allowing the defendant to pursue a defense relating to his personal intent should he choose to do so based on his "distraction" with the fact that the Government is limited in its ability to counter such defense.  In these circumstances, given the record on this "distraction" issue, requiring the defendant to be the proponent of the evidence if he seeks to pursue it is reasonable.

The Court is certainly aware that the defendant is not required to testify or to present any evidence in a criminal trial—however, in this case, given the lack of pre-trial production of the medical records, the Court has serious concerns as to prejudice to the Government to meet medical evidence, and it is balancing the format of a potential use against Rule 403 and the prejudice for failure to comply with Rule 16 obligations.  To be clear, the Court will not allow the defendant to testify that the

myriad appointments were for assorted medical conditions as the Government has not had the opportunity to meet those.

vi.    If the defense lays the appropriate foundation, defendant's wife will be allowed to testify that she observed that the defendant was distracted due to these two medical issues.  She will not be allowed to recite the many medical providers he may have seen for his many medical appointments.  She will not be allowed to cast her testimony in a light which appears to be primarily designed to elicit sympathy.  The Court cautions counsel to proceed carefully.

vii.   To be clear, the defense may argue from the fact of the appointments and the fact of the defendant's absence from the office that he was not present and therefore lacked knowledge or intent for that reason.

IV.    CONCLUSION

For the reasons set forth above, the Government's motion to preclude is

GRANTED IN PART AND DENIED IN PART.  The Court will allow certain

evidence as to Kenneth Levin's absences from the office as set forth above.

SO ORDERED.

Dated:      New York, New York
            January 25, 2016

_____
            KATHERINE B. FORREST
            United States District Judge